### GREAT WEST LIFE ASSURANCE COMPANY

v.

### Mark LEVITHAN.

### Civ. A. No. 93–CV–1560.

United States District Court, E.D. Pennsylvania.

Jan. 12, 1994.

James Michael Beck, Pepper, Hamilton & Scheetz, Philadelphia, PA, for plaintiff.

Francine D. Wilensky, James C. Schwartzman, Schwartzman & Associates, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The defendant has moved for a protective order regarding the discovery requests of the plaintiff. The underlying action was instituted by Great West Life Assurance Company to recover funds that it contends were paid to defendant on a disability policy. Great West

alleges that the defendant repeatedly claimed that he (1) was housebound, (2) was not working in his occupation as corporate executive, (3) had not visited his place of business and (4) had not earned any money during his disability in order to collect on his policy. According to plaintiff, surveillance of Mr. Levithan revealed his repeated presence at his place of business, his frequent absence from his home and his partaking in recreational activities and carrying of large boxes.[1]

It is Great West's position that, "Mr. Levithan still conducts business for Contour Medical, albeit somewhat furtively, and still receives business-related income ...," that Mr. Levithan's transfer of his company to his wife was a sham, and that he is not housebound and engaged only in rest and rehabilitation. According to Great West, much of the disputed discovery is designed to prove the sham nature of Mr. Levithan's claimed lack of relationship with Contour Medical after December 1990. Great West also believes that it is entitled to discovery that might show the falsity of Mr. Levithan's claims that he was "housebound and engaged solely in rest and rehabilitation." Additionally, Great West feels it is entitled to discovery that would reveal the business relationship between Mr. Levithan and Dr. Lincow, who signed the forms submitted to Great West concerning Mr. Levithan's medical treatment.[2]

■ Questions concerning the scope of discovery are among those matters which should be almost exclusively committed to the sound discretion of the district court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81 (3d Cir.1987); *Howze v. Jones*, 750 F.2d 1208 (3d Cir.1984). For the reasons that follow, we must deny the defendant's motion for a protective order.

1. Mr. Levithan also admitted to these allegations at his deposition.

2. Specifically, Great West requests the following discovery: tax returns, tax documents, medical records, medical bills, correspondence involving any medical insurer, documents involving claim(s) for Social Security or other government disability benefits, all calendars, appointment books, desk organizers, travel planners, sched-

■ According to Rule 26 of the Federal Rules of Civil Procedure, the court may, upon a motion by a party, and for good cause shown, make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c). A party seeking a protective order under Rule 26 bears the burden of demonstrating the "good cause" required to support such an order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1988). It is the moving party's burden to show a "particular need" for protection. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule." *Trans Pacific Insurance Co. v. Trans–Pacific Insurance Co.*, 136 F.R.D. 385, 391 (E.D.Pa.1991) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir.1978)).

Here, defendant's broad allegations of harm are conclusory. Lacking are specific examples of potential harm and articulated reasoning in support of the Protective Order. The defendant refers quite often to "privilege," but does not meet his burden of showing the existence of the privilege. Also, the defendant repeatedly insists that the plaintiff is not entitled to discovery regarding his wife—Cindy Levithan. The discovery sought by the plaintiff is, in the court's judgment, relevant to the claims and issues involved in the litigation.

The defendant claims that the plaintiff is involved in a "fishing expedition." However, the plaintiff has substantiated its claims against Mr. Levithan and shown its need for the requested discovery through reference to the surveillance of Mr. Levithan and to Mr. Levithan's testimony at deposition. We will first address the relevance of the requested discovery.

ules or other documents showing travel activity and/or whereabouts, bank records, documents regarding subject matter of this litigation, documents concerning Harry Fox or the Philadelphia Life Insurance Company, documents regarding other businesses held by Mr. Levithan, telephone records, expense account records, travel records, photographs taken of Mr. Levithan since his injury, and passports.

■ The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1) as follows: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Rule 26(b)(1) is to be construed broadly and encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in this case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (*citing Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

As stated above, Great West claims that the discovery they seek is designed to prove three things: 1) that Mr. Levithan's assertions of lack of business-related activity and income are based upon his sham transfer of his business to his wife, 2) the falsity of Mr. Levithan's claims that he was housebound and engaged solely in rest and rehabilitation, and 3) the relationship between Mr. Levithan and Dr. Lincow.

■ Great West has requested several things to prove the sham nature of the transfer of Contour Medical to Cindy Levithan. We agree that the requested tax records and bank records of Mark and Cindy Levithan are discoverable. They are probative of the financial consequences of the transfer of corporate ownership from Mark to Cindy Levithan. Telephone records are discoverable in that they might show that Mr. Levithan was making business-related telephone calls.

■ As to the corporate records requested by the plaintiff, the defendant claims that the discovery request is overbroad. In this respect, we agree with the defendant. The subpoena seeks "[a]ll documents from December 3, 1990 to the present mentioning Contour Medical Supply, Inc., any Contour Chair entity, any Life Alert entity, Real Estate and Commercial Transactions, Inc., Kelley, Taylor, & Winter Funding Sources, Inc., ..." The corporate records are discoverable to the extent that they shed light on the transfer of Contour Medical from Mark Levithan to Cindy Levithan and to establish that Mr. Levithan was involved in business activities. However, plaintiff requests "all documents."

To require the defendant to produce all of the documents pertaining to these six companies regardless of whether they deal with the transfer of Contour Medical or indicate that Mark Levithan participated in business transactions would be unduly burdensome. So, as to the corporate records requested in ¶ 11 of Plaintiff's request for Production of Documents, we will grant a protective order. We do not, however, restrict the plaintiff from amending their request for corporate records.

■ A second portion of the discovery requested by the plaintiff is meant to rebut Mr. Levithan's claims that after his injury, he was housebound and engaged solely in rest and rehabilitation. Plaintiff claims that its surveillance "has established that Mr. Levithan was frequently absent from his home and frequently engaged in recreational, as well as business activities." In his deposition, Mr. Levithan admits that he frequently travelled to resort areas in Arizona, Florida and the Caribbean while claiming to be disabled. The plaintiff is entitled to bank records and credit card records that might corroborate what Great West already knows and/or uncover other activities of Mr. Levithan. These records will show the persons from whom Mr. Levithan purchased goods and services and perhaps provide a basis for rebutting Mr. Levithan's disability claim.

■ Great West's third area of discovery involves the alleged business relationship between Mr. Levithan and Dr. Lincow. Dr. Lincow is the doctor who signed many of the medical reports that Great West claims contain false information. The requested documents may show the existence of a business relationship between Mr. Levithan and Dr. Lincow. They are therefore discoverable to the extent that they are not privileged.

■ The defendant at several instances suggests that information requested by the plaintiff is privileged information. See Defendant's Motion, pp. 5, 6, 10, 11. The party claiming a privilege has the burden of establishing the existence of the privilege. *Bayges v. SEPTA,* 144 F.R.D. 269 (E.D.Pa 1992); *Brock v. Gerace,* 110 F.R.D. 58 (D.N.J.1986).

■ Here, defendant, in his motion, makes several general, unspecified objections on the grounds of privilege. In ¶ 5, defendant claims that the subpoena to Meridian Bank "seeks information which may be privileged . . ." Defendant's Motion, p. 3. In ¶ 6, defendant claims that the subpoena of Fidelity Bank "contains privileged information which is not relevant . . ." Defendant's Motion, p. 3. In ¶ 10, defendant states that access to Contour Medical's telephone records would "unreasonably intrude into privileged information concerning persons other than Mark Levithan . . . and would invade their privacy and perhaps [disclose] trade secrets and confidential information . . ." Defendant's Motion, p. 4. In ¶ 11 when defendant claims that he should not have to supply documents concerning Dr. Arnold Lincow, he argues that "the disclosure of these documents would unreasonably invade the physician-patient relationship of those individuals whose medical records may be involved." Defendant's motion, p. 5. The plaintiff, in requesting these documents, however, asked that the patients' names be redacted from the documents.

The defendant's blanket assertions of privilege are not sufficient to compel a protective order. The defendant has done nothing here but make several 'boilerplate,' privilege objections. He has not met his burden of establishing the existence of the claimed privileges.

■ In objecting to Great West's discovery requests, Mr. Levithan makes repeated reference to the fact that his wife, Cindy Levithan, is not a party to the lawsuit. While it is true that Cindy Levithan is not a named defendant in this proceeding, we do not see how this insulates her or her business or her records from the discovery process. Rule 26(b)(1) allows for discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ." The Plaintiff has shown the relevance of the requested discovery and the defendant has not demonstrated a particular need for protection. Further, the Defendant has not shown the existence of a privilege, nor has he shown how the subpoenas to Fidelity Bank, Meridian Bank, Daniel Saidel and/or Contour Medical, will cause him annoyance, embarrassment, oppression, or undue burden or expense.

Mr. Levithan has not met his burden of showing the "good cause" required by Rule 26. His allegations are conclusory and state no basis upon which a protective order may rest. We therefore must deny defendant's motion for a Protective Order except as to the corporate records requested in ¶ 11 of Plaintiff's Request for Production of Documents.

An appropriate order follows.

### ORDER

AND NOW, this 12th day of January, 1994, upon consideration of Defendant's Motion for Protective Order, it is hereby ORDERED that for the reasons set forth in the preceding Memorandum Opinion, the Motion is GRANTED only with respect to the Plaintiff's Subpoena for/Request to Discover from Daniel Saidel, Esquire "all records concerning Contour Medical Supply, Inc., Contour Lounge, Inc., Contour Chair of Northern New Jersey and Southern New York, Inc., Life Alert Emergency Response, Inc., Real Estate & Commercial Transactions, Inc. and Kelley, Taylor & Winter Funding Sources, Inc." and that Daniel Saidel, Esquire need not respond to these requests.

In all other respects, Defendant's Motion is DENIED.