EASTMAN KODAK COMPANY, Kodak Polychrome Graphics LLC, Qualex, Inc. and Kodak Versamark, Inc., Plaintiffs,

v.

Mark S. CAMARATA, Kimberli K. Camarata, Strategic Asset Management, Inc., Eastern Business Services, John E. Nicolo, Constance Roeder, American Valuation Services, Inc., Empire Valuation Services, Inc., Global Valuation Technologies, Inc., South Slope Holding Corp., Dale H. Durley, Carol Durley, Durley & Durley LLC, American Tax Associates, Inc., Charles A. Schwab, Karen M. Schwab, I.A.C. Corporation, Steven R. Letman, Nancy J. Letman, Nottingham, Inc., Consultus Asset Valuation, Inc., Richard C. Ackerman, Professional Valuation Services, Inc. and David N. Finnman, Defendants.

No. 05–CV–6384L.

United States District Court,
W.D. New York.

Sept. 25, 2006.

Elizabeth A. Wolford, Laurie A. Giordano, Michael R. Wolford, Paul L. Leclair, Sarah Snyder Merkel, Wolford & Leclair LLP, Rochester, NY, for Plaintiffs.

John R. Parrinello, Redmond and Parrinello, LLP, Michael J. Tallon, Michael J. Tallon, P.C., Matthew R. Lembke, Cerulli Massare & Lembke, Lawrence L. Kasperek, Scott M. Green, Rochester, NY, Joseph Tacopina, Joseph Tacopina, P.C., Lyndon M. Tretter, Hogan & Hartson L.L.P., New York, NY, Paul Derohannesian, II, Derohannesian & Derohannesian, Albany, NY, James D. Gilbert, Terrence A. Grady, Terrence A. Grady and Associates Co., L.P.A., Columbus, OH, for Defendants.

## DECISION & ORDER

PAYSON, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Eastman Kodak Company ("Kodak") and three of its wholly-owned subsidiaries have filed a civil action alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute, 18 U.S.C. §§ 1961 *et seq*, against various defendants, including John E. Nicolo, his wife Constance Roeder and four entities (American Valuation Services, Inc. ("AVS"), Empire Valuation Services, Inc. ("EVS"), Global Valuation Technologies, Inc. ("GVT") and South Slope Holding Corporation) owned and controlled by Nicolo (the "Nicolo defendants"). (Docket ## 121–23). In addition to the civil RICO claims, the Amended Complaint (hereinafter referred to as the "Complaint") asserts claims against the Nicolo defendants for fraud, conversion, unjust enrichment, fraudulent conveyance, breach of contract, aiding and abetting the breach of fiduciary duty and the imposition of a constructive trust and an accounting. *(Id.)*. With the exception of Roeder, all defendants have answered the Complaint. Roeder has filed a motion to dismiss, which is pending before the district court.[1] (Docket # 110).

The Complaint alleges that the defendants violated the RICO statute by engaging in a scheme to defraud plaintiffs of in excess of fourteen million dollars over a thirteen-year period. (Docket ## 121–23, ¶¶ 1, 71). According to the Complaint, the defendants, who included Charles A. Schwab, a former tax assessor for the Town of Greece, conspired to inflate the tax assessments on Kodak's real property located in Greece in order to induce Kodak to hire appraisers—one of whom was John Nicolo—to work to reduce the assessments. The appraisers, the Complaint alleges, were paid excessive fees by Kodak to reduce the artificially high assessments, and the appraisers then kicked-back a

---

1. Prior to the date scheduled for oral argument of that motion, and after oral argument on the instant motion for a protective order, counsel for the Nicolo defendants moved to withdraw. That motion was granted, and it was not until last month that the Nicolo defendants retained new counsel. During that four-month period, the pending motions involving the Nicolo defendants were held in abeyance.

portion of those fees to Schwab and two insiders in Kodak's Corporate Tax Department, David N. Finnman and Mark S. Camarata, who were involved in the scheme and were responsible for hiring the appraisers. *(Id.* at ¶¶ 2–10).

The Complaint further asserts that during the course of the conspiracy, Kodak paid the Nicolo defendants at least $10,967,476 for appraisal services that were induced by fraud and frequently not provided. *(Id.* at ¶ 80). The Nicolo defendants, in turn, are alleged to have paid kickbacks to Schwab of more than $1 million in funds and real estate *(id.* at ¶¶ 451–53, 456) and to Camarata of more than $1.5 million *(id.* at ¶¶ 471–76).

Plaintiffs assert substantive and conspiracy RICO violations. *(Id.* at ¶¶ 514–21). Both are based upon predicate acts of alleged mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, money laundering under 18 U.S.C. §§ 1956 and 1957, and interstate transportation of stolen property under 18 U.S.C. § 2314. *(Id.* at ¶¶ 504–13). With respect to the money laundering violations under § 1956, the Complaint asserts that the defendants, including Nicolo and Roeder, repeatedly deposited the proceeds of the scheme into various financial institutions with the intent "to promote the carrying on of the unlawful activity" *(id.* at ¶ 506) and "knowing that the transactions were designed to and did conceal and disguise the nature, location, source, ownership or control of the proceeds" *(id.* at ¶ 507).

## THE PENDING DISCOVERY MOTION

Nicolo and Roeder have moved for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure seeking to quash subpoenas issued to four financial institutions insofar as they seek documents pertaining to Nicolo's and/or Roeder's personal accounts. (Docket # 117). Specifically, the subpoenas were issued to Salomon Smith Barney, Inc. ("Smith Barney"), Wachovia Bank NA ("Wachovia"), Merrill Lynch & Co., Inc. ("Merrill Lynch") and Fifth Third Bank ("Fifth Third") and seek, *inter alia,* account state-

ments, cancelled checks, loan documents, investment and real estate information.[2] (Docket # 118, Exhibit ("Ex.") A). The subpoenas do not limit the time frame for the documents sought, although plaintiffs' counsel has represented her understanding that the institutions do not generally retain records for a period longer than seven years. Plaintiffs oppose the motion for a protective order, arguing that the information sought is not merely relevant to the claims asserted, but lies at the very heart of those claims.

Following the filing of this motion, the Nicolo defendants sought to include in its reach a fifth subpoena, this to Northern Trust Bank ("Northern Trust"), that seeks the same information sought by the other subpoenas. Plaintiffs oppose the inclusion of the Northern Trust subpoena in this motion. Because that subpoena is identical to the others in terms of the records it seeks and thus presents the same factual and legal issues, interests of efficiency lead me to conclude that it should be addressed as part of the pending motion.

For the following reasons, I deny the motion for a protective order, except insofar as the subpoenas shall be modified to limit the production of documents to the period 1992 to the present.

## DISCUSSION

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Of course, to be discoverable, the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard, therefore, is widely recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98

---

2. Because subpoenas were issued under this Court's jurisdiction to two of the four institutions (Merrill Lynch and Smith Barney), the defendant

also seek to quash those subpoenas under Fed. R.Civ.P. 45(c)(3). (Docket # 118 at 2 n. 2).

S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). *See also Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland,* 122 F.R.D. 447, 449 (S.D.N.Y.1988) (term "reasonably calculated" in Rule 26(b)(1) means "any possibility" that the information sought may be relevant) (quoting Fed.R.Civ.P. 26(b)(1)).

█ The Federal Rules afford district courts broad discretion in managing the manner in which discovery proceeds. *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69 (2d Cir.2003). For instance, "Rule 26(c) provides that 'for good cause shown' a court may make 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery." *Id.* (quoting Fed. R.Civ.P. 26(c)(1), (3)). Moreover, Federal Rule 45(c) permits the court to "quash or modify [a] subpoena if it ... subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv).

Nicolo and Roeder seek a protective order to "quash or modify the [s]ubpoenas to the extent that they seek discovery of their personal financial information." (Docket # 130 at 9). Such an order is warranted, they maintain, because records relating to accounts held in the name of Nicolo or Roeder personally are irrelevant to the claims at issue in this case. (Docket # 118 at 4–5). At oral argument, counsel for Nicolo and Roeder appeared to refine their argument slightly, assuming the relevance of records reflecting transactions between and among the defendants themselves, but maintaining that plaintiffs should be required to seek such records from the defendants themselves before resorting to non-party subpoenas. Neither argument is availing in my view.

█ Any analysis of the relevance (or irrelevance) of the requested material must begin with an understanding of the claims asserted. Here, plaintiffs have asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money laundering violations. Specifically, the Complaint alleges that the Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of this motion, money laundering. The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity—that is, by paying and depositing kickbacks to certain members of the enterprise—and to conceal and attempt to conceal the proceeds, their nature, source and location—that is, by transferring funds between defendants and between various accounts maintained by those defendants.

Nowhere in the Complaint do plaintiffs allege that the purported money laundering was restricted to transactions through and between defendants' business, rather than their personal accounts. Indeed, the allegations in the Complaint, as well as the records produced thus far and described in plaintiffs' opposition papers, are to the contrary.

The Complaint, for example, alleges that Nicolo and Ackerman (presumably through their business accounts) paid certain of the illegal proceeds to Roeder, who, in turn, paid kickbacks to the Schwab and Camarata defendants. (Docket # 121–23, ¶¶ 73, 497 RR). Since the Complaint does not allege that Roeder had any business accounts, nor has evidence of any such accounts been tendered, I read the Complaint to charge that Roeder paid such kickbacks out of her own accounts. Such a reading is supported by the inclusion in plaintiffs' opposition papers of a copy of a check in the amount of $11,875 issued on Roeder's personal Northern Trust account, signed by her and made payable to one of the Camarata's businesses. (Docket # 127, Ex. 3).

In addition, the Complaint specifically asserts that on November 8, 2002, Kodak paid AVS (one of Nicolo's companies) $156,000, which Nicolo deposited into an AVS bank account and that same day issued a check to Roeder from that account in the amount of $142,500, which she deposited into her Northern Trust account. The "memo" line

on the check to Roeder states "Fees—Kodak Park Greece." *(Id.* at ¶¶ 497 A–D). On many other occasions, according to the Complaint, Nicolo received checks from Kodak that he deposited into his business accounts and, within days of those deposits (periods ranging from one to twelve days), transferred funds to Roeder (often in very similar amounts to the Kodak payments) by issuing checks to her from his business accounts that she then deposited into her personal Northern Trust account. *(Id.* at ¶¶ 497 E–KK). The Complaint details seven such transactions during the period August 1999 through October 2002. *(Id.).*

Since the Complaint was filed, plaintiffs have apparently obtained additional records showing the use of personal accounts, including certain accounts maintained at the subpoenaed institutions, in purported furtherance of the scheme. For example, plaintiffs have produced a copy of a $5,250 check issued on December 27, 2004 from John Nicolo's personal account at Northern Trust to one of Camarata's companies. (Docket # 127, Ex. 3). In addition, plaintiffs have traced payments during the period 1999 through 2005 totaling approximately $2.5 million from Nicolo and his entities to Roeder;[3] of this amount, approximately $1.6 million was deposited into Roeder's personal Northern Trust account. (Docket # 138, Ex. E). Significantly, approximately $850,000 remains unaccounted for. Finally, copies of various checks produced reflect transactions among the subpoenaed accounts; for example, certain checks issued from Northern Trust accounts in the names of John Nicolo and Constance Roeder show transfers of funds from those accounts into accounts at Merrill Lynch (Docket # 127, Exs. 13, 14, 15, 16) and Southern Community Bank (now Fifth Third Bank) (Docket # 127, Ex. 11).[4]

Despite the evidence obtained thus far that shows the use of personal accounts by Nicolo and Roeder (i) to receive funds denoted as "Kodak Fees," (ii) to receive funds from Nicolo businesses often within days of those businesses' receipt from Kodak of appraisal fees, and (iii) to pay funds to the Kodak insiders who hired Nicolo to perform such work, defendants urge the Court to quash the subpoenas on the ground that such personal financial information is irrelevant. *Cf. Peskoff v. Faber,* 230 F.R.D. 25, 28 (D.D.C. 2005) (quashing subpoena for personal financial information in suit alleging civil RICO and fraud claims on grounds that court found no "connection between the defendant's accounts and specific allegations in the plaintiff's complaint"). They maintain that because any alleged money laundering violation would have been complete upon the deposit of Kodak's payment into Nicolo's businesses' accounts, any further transactions with those funds are irrelevant. While I agree that any further transactions may be unnecessary to establish money laundering, I cannot agree that they are irrelevant. As counsel for the defendants conceded at oral argument, subsequent transactions with those funds— whether they be purported kickbacks to the insiders or transfers between accounts in an effort to conceal the proceeds or their location—may constitute further money laundering violations. To preclude discovery into such transactions would potentially deprive plaintiffs of evidence demonstrating that the Nicolo defendants, once paid by Kodak, in turn paid kickbacks to other members of the alleged conspiracy. Indeed, as I read the Complaint, that purported kickback agreement was the inducement that motivated and facilitated the entire scheme. On the record before this Court, which includes a very detailed 612–paragraph complaint, I conclude that it would be improper and inconsistent with Fed.R.Civ.P. 26 to limit the proof that plaintiffs may discover and develop in the way that defendants urge. *See, e.g., Sierra*

---

**3.** Some of those payments include checks totaling $228,000 issued to Roeder by Nicolo's company GVT that were signed by co-defendant Richard Ackerman.

**4.** The Complaint itself alleges that the defendants, including the Nicolo defendants, committed money laundering by repeatedly depositing the proceeds of the fraudulent scheme into various financial institutions, including the Wachovia Bank NA in Orlando, Florida. (Docket # 121–23, ¶¶ 506, 507, 509). With respect to Smith Barney, records obtained by plaintiffs indicate that Roeder had an active account with Smith Barney during 2005. *(See* Letter from E. Wolford, Esq. to this Court, dated April 6, 2006).

*Rutile Ltd. v. Katz,* 1994 WL 185751, *4 (S.D.N.Y.1994) ("While cognizant of the fact that the subpoenas [issued to financial institutions and seeking personal financial information] intrude on personal financial affairs ..., I am unable to conclude that the personal intrusion is so great that it outweighs defendants' right to pursue relevant material through the subpoenas in issue"); *Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y.1990) ("The Court finds ... that whatever privacy interests the moving defendants have in the material sought do not outweigh the plaintiff's right to pursue relevant material that the subpoenas [issued to financial institutions for records relating to defendants and their family members] must be quashed"). *See also Great West Life Assurance Co. v. Levithan,* 152 F.R.D. 494, 496 (E.D.Pa.1994) (denying motion for protective order to quash non-party subpoenas to financial institutions for personal financial information concerning defendant and his wife; noting, among other things, that plaintiff's claims had been "substantiated" and that subpoenas were not part of an improper "fishing expedition").

Nor do I find justified the defendants' request that compliance with the subpoenas be deferred until plaintiffs obtain discovery from all of the defendants.[5] Here, plaintiffs have asserted with notable detail that they have been defrauded by the Nicolo defendants of substantial sums of money over a very substantial period of time. Even if a tiered approach to discovery were appropriate in some cases, I do not find that this case is one of them. Considering the nature of the allegations in the Complaint, plaintiffs should not be forced to forego or defer discovery of relevant information and rely upon the good faith of the defendants to produce complete and accurate records. The Federal Rules of Civil Procedure permit them to pursue discovery from these non-party financial institutions, and no compelling reason exists to limit their rights as defendants urge.

As for the scope of the information sought through the subpoenas, I agree that it is indeed broad. That breadth is justified,

however, by the breadth of the conspiracy alleged in the Complaint—in terms of duration (thirteen years), proceeds involved ($14,-000,000) and participants (twelve individual defendants and twelve related entities). The subpoenas should be limited in time frame, however, and I find that the appropriate time frame is from 1992 (the year the conspiracy commenced, according to the Complaint) until the present. *See Chazin v. Lieberman,* 129 F.R.D. at 98 (modifying subpoenas to limit time frame to time period alleged in complaint).

### CONCLUSION

Accordingly, defendants' motion for a protective order quashing or modifying subpoenas issued to Salomon Smith Barney, Inc., Wachovia Bank NA, Merrill Lynch & Co., Inc., Fifth Third Bank and Northern Trust Bank **(Docket # 117)** is **DENIED** except that they are limited to the time period 1992 to the present.

**IT IS SO ORDERED.**

---

**5.** It is not clear whether this proposal contemplates the disclosure by Nicolo and Roeder of all their financial records, personal and business, or only business records.