350 F.3d 65
 In re: SUBPOENA ISSUED TO DENNIS FRIEDMAN, Esq. of Gibson, Dunn & Crutcher LLP,
Hechinger Investment Company of Delaware, Inc., Debtor
The Official Committee of Unsecured Creditors of Hechinger Investment Company of Delaware, Inc., et al. on behalf of Hechinger Investment Company of Delaware, Inc., et al., Plaintiff-Appellant,
v.
Dennis Friedman, Esq., John W. Hechinger, Sr., John W. Hechinger, Jr., W. Clark McLelland, Kenneth J. Cort, Ann D. Jordan, Robert S. Parker, S. Ross Hechinger, Melvin A. Wilmore, Alan J. Zakon, Defendants-Appellees,
Fleet Retail Finance Group, Defendant.
 Docket No. 03-5001.
 United States Court of Appeals, Second Circuit.
 Argued: September 4, 2003.
 Decided: November 21, 2003. Cir.1986
 
 David E. Ross, Kasowitz, Benson, Torres & Friedman, LLP (Andrew K. Glenn and Ian D. Katz, of counsel), New York, NY, for plaintiff-appellant.
 Mitchell A. Karlan, Gibson, Dunn & Crutcher LLP (Thomas A. Gentile, of counsel), New York, NY, for defendants-appellees.
 Before: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.
 Judge WESLEY concurs in result only in a separate opinion.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Plaintiff-appellant appeals from an order of the United States District Court for the Southern District of New York (Pollack, J.) quashing its deposition subpoena of defendant-appellee Dennis Friedman, Esq. ("Friedman"), an attorney who previously served as counsel during merger negotiations to a now-bankrupt corporation of which the non-attorney defendants-appellees are former directors. The former directors are being sued by plaintiff-appellant in the United States District Court for the District of Delaware for breach of their fiduciary duties in connection with the merger and have raised a defense based on Friedman's advice. Although no longer serving as a formal adviser to the former directors, Friedman is a non-litigation partner at the law firm now representing them in the Delaware litigation. The district court ruled, relying on the rule set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir.1986), that plaintiff-appellant must exhaust all practical alternative means of obtaining the information sought from Friedman before it would consider allowing the proposed deposition and ordered plaintiff-appellant to proceed first by written interrogatories. We conclude that the deposition-discovery regime of the Federal Rules of Civil Procedure requires a more flexible approach to attorney depositions than the rigid Shelton rule, which improperly guided the District Court's exercise of discretion in quashing the subpoena, but we need not rule definitively on the matter, because we have recently been advised that Friedman has consented to the deposition, thereby rendering this appeal moot.
 
 
 BACKGROUND
 
 
 2
 Plaintiff-appellant, the Liquidation Trust of Hechinger Investment Company of Delaware, Inc., and the non-attorney defendants-appellees, former members of the company's board of directors, are currently involved in securities litigation in the United States District Court for the District of Delaware. That litigation concerns the defendants' actions in connection with the merger of Hechinger Investment Company ("Hechinger") and another home improvement company, Builder's Square. The combined companies declared bankruptcy approximately two years after the merger. Plaintiff's predecessor-in-interest (an unsecured creditors' committee) subsequently brought the underlying Delaware lawsuit, claiming inter alia that Hechinger's former directors breached their fiduciary duties to the company's creditors by approving the merger. The directors have asserted affirmative defenses in the lawsuit based on the business judgment rule and their reliance on the advice of their counsel, defendant-appellee Friedman, during the merger negotiations. According to defendants, at the time Hechinger's board was considering the Builder's Square merger, Friedman (then of Chadbourne & Parke LLP) advised them about their fiduciary obligations and the business judgment rule. Friedman's representation of Hechinger ended after the merger, and he subsequently moved to Gibson Dunn & Crutcher ("GDC"), the law firm serving as trial counsel for the defendants in the pending Delaware litigation. Friedman is not a litigator and is not counsel of record either in the court below or in the underlying action.
 
 
 3
 On October 3, 2002, plaintiff served Friedman with a non-party deposition subpoena, issued in the Southern District of New York, seeking his testimony concerning the nature and substance of his advice to the defendants in connection with the Hechinger-Builder's Square merger. Having deposed all of the available former Hechinger directors, plaintiff claims that the directors had either conflicting or no recollections of whether Friedman specifically directed the board to consider the interests of Hechinger's creditors in evaluating the merits of the proposed merger. Plaintiff therefore argues that deposing Friedman is necessary. Friedman and the Hechinger defendants moved to quash the subpoena on October 7, 2002.
 
 
 4
 After a hearing on November 12, 2002, the district court initially held the motion to quash in abeyance "pending a good faith showing by plaintiff of the propriety of the intended inquiries to the particular proposed witness." (Nov. 12, 2002 Order.) The district court instructed plaintiff to "show by proposed interrogatories covering the desired deposition that legally proper inquiries exist under the circumstances to ground the request for deposing the attorney-witness; and that the attempted deposition is not an abusive procedure under all the facts and circumstances involved herein, including the identity of the proposed witness, as attorney." Id. The plaintiff responded by submitting a list of subjects about which it wished to question Friedman, instead of the required interrogatories. The district court thereafter quashed the subpoena by order dated December 10, 2002.
 
 
 5
 In its December 10, 2002 order, the district court first held that the proposed deposition was not barred by attorney-client privilege because plaintiff, as bankruptcy trustee, could waive the privilege with respect to both defendants' communications with Friedman and his attorney work product.[1] In re Subpoena Issued to Friedman, 286 B.R. 505, 507-08 (S.D.N.Y. 2002). The district court went on to find that Friedman's advice was "both relevant and possibly crucial to the plaintiff's preparation of its case" and noted that "the only way to find out the attorney's advice may be to inquire directly of the attorney." Id. at 509. Nevertheless, the district court determined that the proposed deposition was barred under the three-pronged rule set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir.1986) (hereinafter "Shelton"), holding that parties seeking to depose "opposing trial counsel" must show that "no other means exist to obtain the information [sought] than to depose opposing counsel." Id. at 1327. Relying on other district courts' adoption of the Eighth Circuit's decision in Shelton, the district court ruled that a party seeking to depose opposing counsel "must demonstrate that the [proposed] deposition is the only practical means of obtaining the information" and that "[o]ther methods, such as written interrogatories, should [first] be employed." Friedman, 286 B.R. at 509 (quoting Pereira v. United Jersey Bank, Nos. 94 Civ. 1565, 94 Civ. 1844, 1997 WL 773716, at *8 (S.D.N.Y. Dec.11, 1997) (quoting West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D.Fla.1990))). Consequently, despite finding that "it is not unreasonable for the Trust to seek to depose Mr. Friedman," the district court found that plaintiff's list of broad subject-matter inquiries did not show that an oral deposition was the only practical means of obtaining the information it sought and ordered plaintiff to proceed by written interrogatories. Id.
 
 
 6
 Plaintiff appealed from the December 10, 2002 order, and defendants moved to dismiss the appeal on the ground that the order was not sufficiently final to provide this Court with jurisdiction because it left open the possibility that the district court might, at some later point, permit the plaintiff to depose Friedman. A panel of this Court denied the motion and ordered the appeal expedited. (June 26, 2003 Order Denying Defendants' Motion to Dismiss the Appeal.)
 
 
 DISCUSSION
 
 
 7
 We review a district court's ruling on a motion to quash a subpoena for abuse of discretion. See DG Acquisition Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75, 79 (2d Cir.1998) (quoting Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir.1992)). Although the district court "enjoys wide discretion in its handling of pre-trial discovery," id., it nevertheless abuses its discretion "when (1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." Amer. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.), 330 F.3d 104, 108 (2d Cir.2003) (internal punctuation and quotation marks omitted); see also Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").
 
 
 8
 The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." Schlagenhauf v. Holder, 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (quoting Hickman v. Taylor, 329 U.S. 495, 501, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (internal quotation marks omitted)). Indeed, the rules provide for the taking of discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible." See Fed.R.Civ.P. 26(b)(1) (emphasis added). Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests. See, e.g., Fed.R.Civ.P. 30(a)(1) ("A party may take the testimony of any person ... by deposition upon oral examination without leave of court.") (emphasis added); Fed.R.Civ.P. 26(c) (permitting courts to issue a protective order upon "good cause shown" by the party opposing discovery).[2]
 
 
 9
 Nevertheless, the federal rules give district courts broad discretion to manage the manner in which discovery proceeds. In particular, Rule 26(b)(2) permits a district court to limit "[t]he frequency or extent of use of the discovery methods otherwise permitted under [the federal] rules" if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or more readily obtainable from another source; (2) the party seeking discovery already has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(i)-(iii). Moreover, Rule 26(c) provides that "for good cause shown" a court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery. Fed.R.Civ.P. 26(c)(1), (3). In other words, although a party seeking a deposition need not demonstrate the propriety of its request, judges may prevent the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship.
 
 
 10
 Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery. See, e.g., Hickman v. Taylor, 329 U.S. 495, 506-14, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (protecting attorney work product from broad discovery). Out of concern that the relationship between attorneys and clients be protected, the Eighth Circuit in Shelton has strongly circumscribed the situations in which a party can depose an opposing party's counsel. In Shelton, the Eighth Circuit held that it was not improper for the defendant's supervising in-house litigation counsel in an auto accident case to refuse to submit to a deposition concerning her awareness of certain documents that the defendant had supposedly produced. The plaintiff in Shelton sought to depose defense counsel ostensibly to verify that the defendant had complied fully with the plaintiff's discovery requests. Troubled by the increasingly popular practice of taking an opposing counsel's deposition, the Eighth Circuit stated that such depositions should be allowed "only in limited circumstances." Id. at 1327. In particular, the Eighth Circuit noted its concern that such depositions could provide a back-door method for attorneys to glean privileged information about an opponent's litigation strategy from the opposing attorney's awareness of various documents and drew an analogy to the practice of forcing another party's trial counsel to testify as a witness, which courts typically discourage because of its disruptive effect on the adversary system. Id.
 
 
 11
 In light of these concerns, the Eighth Circuit held that parties seeking to depose "opposing trial counsel" must show that: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case. Id. (the "Shelton rule"). The court went on to hold that in the case before it the plaintiff did not meet the "non-privileged" prong of the test. Id. at 1328-29. Shelton thus represents a departure from the otherwise permissive deposition-discovery regime under the Federal Rules of Civil Procedure. The Eighth Circuit summarized the specific policies that animated its heightened standard for depositions of opposing counsel as follows:
 
 
 12
 Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.
 
 
 13
 Id. at 1327. Although the Shelton court did not explicitly rest this aspect of its holding on concerns about intruding on attorney-client privilege, such concerns were implicit in the court's concern over a "chilling effect" on attorney-client communications.
 
 
 14
 The Eighth Circuit further explained the policies animating its Shelton decision in Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir.2002), and limited the Shelton rule's reach. In Pamida, the plaintiff shoe retailer sued for indemnification from shoe manufacturers for the costs it incurred in the defense and settlement of a patent infringement lawsuit. The defendant shoe manufacturers sought to depose the attorneys who represented the plaintiff both in the indemnification action and the original patent lawsuit about whether the plaintiff had given adequate notice of its indemnity claim, as well as whether the fees the plaintiff sought were reasonably incurred in defending the patent infringement lawsuit. In permitting the depositions, the Eighth Circuit explained that Shelton "was intended to guard against the `harassing practice of deposing opposing counsel ... that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" Id. at 729-30 (quoting Shelton, 805 F.2d at 1330). Such concerns were not implicated, according to the Eighth Circuit, when an attorney seeks only relevant information about prior terminated litigation:
 
 
 15
 The Shelton test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. Because this abuse of the discovery process had become an ever increasing practice, this Court erected the Shelton test as a barrier to protect trial attorneys from these depositions. But Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.
 
 
 16
 Id. at 730 (internal citations omitted). Accordingly, the court held that "[the defendant] need not satisfy Shelton to depose the [plaintiff's] attorneys regarding information involving the concluded patent infringement case," but that the proposed depositions were still subject to the standards of Rule 26. Id. at 730-31.
 
 
 17
 Although we have cited Shelton for the proposition that depositions of "opposing counsel" are disfavored, see United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir.1991), we have never adopted the Shelton rule and have stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature. Gould Inc. v. Mitsui Min. & Smelting Co., Ltd., 825 F.2d 676, 680 n. 2 (2d Cir.1987). Indeed, only the Sixth Circuit has followed the Eighth in adopting the Shelton rule. See Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628 (6th Cir.2002) (adopting Shelton).[3] Rather, as we implicitly recognized in Gould, 825 F.2d at 680 n. 2, the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices' but it is a circumstance to be considered. Several district courts in this Circuit have properly applied a flexible approach to the issue of lawyer depositions. See, e.g., Calvin Klein Trademark Trust v. Wachner, 124 F.Supp.2d 207, 211 (S.D.N.Y.2000) (rejecting "wooden[]" adherence to the Shelton rule); United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co., Nos. 97 Civ. 6124, 98 Civ. 3099, 2000 WL 1253262, at *2 (S.D.N.Y. Sept.1, 2000) (holding risk that depositions would disrupt litigation or raise significant privilege issues was unlikely and not of sufficient magnitude to outweigh the demonstrated need for the information they would provide); Nakash v. United States Department of Justice, 128 F.R.D. 32, 35 (S.D.N.Y.1989) (holding major rationales of decisions discouraging opposing attorney depositions — avoiding unnecessary expense and interference with the attorney-client relationship — were not applicable).
 
 
 18
 Here, the district court's ruling — that plaintiff "must demonstrate that the [proposed] deposition is the only practical means of obtaining the information" and thus must first attempt to proceed by written interrogatories — was premised on its determination that the proposed deposition was subject to the Shelton test, rather than to the flexible approach that we conclude is mandated by the federal rules. However, we need not rule definitively whether the reliance on Shelton tainted the district court's exercise of discretion because we have recently been advised that Friedman has agreed to be deposed.[4] Under these circumstances, the appeal has become moot.
 
 
 CONCLUSION
 
 
 19
 The appeal is dismissed as moot.
 
 
 
 Notes:
 
 
 [1]
 This ruling was in accordance with a similar ruling made by the District Court in DelawareSee In re Hechinger Investment Co. of Delaware, 285 B.R. 601, 609-13 (D.Del.2002).
 
 
 [2]
 District courts have also typically treated oral depositions as a means of obtaining discoverable information that is preferable to written interrogatoriesSee Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549-50 (S.D.N.Y.1989) (listing "several reasons why oral depositions should not be routinely replaced by written questions," including the need for follow-up, observation of a prospective witness's demeanor, and avoidance of receiving pre-prepared answers so carefully tailored that they are likely to generate additional discovery disputes); Greenberg v. Safe Lighting Incorporated, Inertia Switch Division, 24 F.R.D. 410, 411 (S.D.N.Y.1959) ("Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures in aid of discovery under the [Federal R]ules [of Civil Procedure]."); see also National Life Ins. Co. v. Hartford Acc. and Indem. Co., 615 F.2d 595, 600 n. 5 (3d Cir.1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."). Cf. S.D.N.Y. Loc. Civ.R. 33.3(b) (stating that interrogatories other than those served at the commencement of discovery "may only be served ... if they are a more practical method of obtaining the information sought than a request for production or a deposition") (emphasis added).
 
 
 [3]
 Two other circuits have upheld lower court rulings premised onShelton by affirming on the grounds that the rulings were within the lower court's discretion to manage discovery under Rule 26. See Boughton v. Cotter Corp., 65 F.3d 823, 830-31 (10th Cir.1995) (approving of the three-pronged test set forth in Shelton, but ultimately upholding the district court's application of the rule under Rule 26); Nguyen v. Excel Corp., 197 F.3d 200, 208-09 (5th Cir.1999) (adopting Shelton's statement that depositions of opposing counsel are generally disfavored and should only be permitted in limited circumstances, but upholding a lower court's decision to permit plaintiff to depose opposing trial and in-house counsel under Rule 26).
 
 
 [4]
 Our concurring colleague does not believe "that this now-mooted appeal warrants a writing on its former merits."Infra, at 73. We recognize that the mootness of this appeal deprives us of appellate jurisdiction to adjudicate the merits and requires dismissal of the appeal. In such circumstances, any discussion of the merits is dicta and would normally be inappropriate. Nevertheless, two esteemed district court judges — in this litigation, In re Subpoena Issued to Friedman, 286 B.R. at 509, and in In re Hechinger Investment Co. of Delaware, 285 B.R. at 609-13 — have assumed that the Shelton rule has been adopted by our Court, a view with which we disagree. In such a circumstance, a non-binding discussion of the merits will hopefully serve the useful purpose of cautioning about the limits of our prior rulings on a frequently litigated issue and perhaps avoid some needless appeals.
 
 
 
 20
 WESLEY, Circuit Judge, concurring in result only.
 
 
 21
 Because the jurisdictional requirement of an actual case or controversy under Article III, § 2, cl. 1 has eluded us here, I concur in result only. This appeal has been properly dismissed as moot and therefore no adjudication of the rights of the parties is necessary or proper. The majority produces an odd result — a careful discussion of an issue that would have resolved a dispute but for the fact that it no longer exists. 13A Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3533, p 212 (1984). I cannot agree that this now-mooted appeal warrants a writing on its former merits. This Court no longer has jurisdiction to consider the matter.