CENDANT CORPORATION, Plaintiff,

v.

E. Kirk SHELTON, Amy M. Shelton and Robin D. Jackson, Trustee of the Shelton Children Irrevocable Trust, Defendants.

United States of America, Plaintiff,

v.

SCIP Partners, L.P., SCIP Management Company, Inc., Robin D. Jackson, As Trustee of the Shelton Children Irrevocable Trust, Amy M. Shelton, Vicki S. Deangeli, Scott E. Shelton, Kip A. Shelton, Christine A. Deangeli, Adam M. Deangeli, John A. Schultz, And E. Kirk Shelton, Defendants.

Civ. Nos. 3:06CV00854(AWT), 3:06CV01827(AWT).

United States District Court, D. Connecticut.

Oct. 29, 2007.

---

Christopher R. Drake, Francis J. Brady, Robert E. Kaelin, Murtha Cullina LLP, Hartford, CT, for Plaintiff.

Andrew Kanter, Richard J. Schaeffer, Dornbush, Schaeffer, Strongin & Venaglia, LLP, New York, NY, Hope C. Seeley, Santos & Seeley, Hartford, CT, Thomas P. Puccio,

New York, NY, for Defendant E. Kirk Shelton.

Frank J. Franzino, Jr., Meier Franzino & Scher, LLP, New York, NY, Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, for Defendant Amy M. Shelton.

Charles Matays, Matays & Kretschmann, New York, NY, Jeremy A. Mellitz, Withers Bergman, John A. Farnsworth, Withers Bergman, New Haven, CT, for Defendant Robin D. Jackson Trustee, Shelton Children Irrevocable Trust.

## *ORDER RE DEPOSITIONS OF ATTORNEYS POLIFKA AND BLATTMACHR*

ALVIN W. THOMPSON, District Judge.

Plaintiff Cendant Corporation ("Cendant") seeks an order permitting it to take the depositions of Attorney Pearl Polifka ("Polifka") of Dornbush, Schaeffer, Strongin & Venaglia LLP ("Dornbush Schaeffer"), and Attorney Jonathan Blattmachr ("Blattmachr") of Milbank, Tweed, Hadley & McCloy LLP ("Milbank Tweed"). In addition, Cendant seeks a determination that, by virtue of the crime-fraud exception, neither the attorney-client privilege nor the work-product doctrine can be asserted as a basis for refusing to respond to inquiries related to the formation and/or operation of the Shelton Family Trust and the Shelton Children's Irrevocable Trust (collectively the "Trust") and/or SCIP Partners, L.P. and SCIP Management Company, Inc. (collectively "SCIP"). For the reasons set forth below, Cendant's request is being granted.[1]

## I. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that parties may obtain discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible." Fed.R.Civ.P. 26(b)(1). However a district court may limit:

> The frequency or extent of the use of discovery methods otherwise permitted under [the federal] rules ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

■ In *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 72 (2d Cir.2003), the Second Circuit stated that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." The Second Circuit suggested several non-exclusive factors that courts should consider when analyzing whether the proposed deposition of an attorney-witness is appropriate.[2] These considerations include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.*

1. Cendant made several requests in its Motion for Discovery Order as to Depositions (Doc. No. 208). This order addresses only those requests relating to Attorneys Polifka and Blattmachr.

2. The above-captioned cases have been consolidated for the purpose of discovery and trial. The cases contain both federal and state law claims. The Connecticut Supreme Court has adopted the

Second Circuit standard for analyzing the crime-fraud exception to the attorney-client privilege, which is the primary issue presented by the instant request. *See Olson v. Accessory Controls and Equipment Corporation et al.,* 254 Conn. 145, 173–77, 757 A.2d 14 (2000). Therefore, this court applies federal law in analyzing the issues presented by Cendant's request.

**404**

## II. DISCUSSION

### A. *The Need to Depose the Lawyers*

Cendant has demonstrated that the testimony of each of Attorney Polifka and Attorney Blattmachr is important in terms of resolving the issues in this case. Cendant claims, *inter alia,* that defendant E. Kirk Shelton ("Shelton") fraudulently conveyed assets to both the Trust and SCIP in an effort to hinder, delay, or defraud his creditors. Defendant Shelton retained Attorney Polifka to create the Trust. Attorney Blattmachr assisted in the formation of SCIP, represented Shelton in connection with transfers to SCIP, and eventually represented Shelton with respect to all matters that were a part of his estate planning, including the Trust. Because Cendant contends that both the Trust and SCIP were vehicles formed by Shelton to hinder, delay or defraud his creditors, evidence concerning the details as to the formation of these entities and the transactions to which they were a party is central to Cendant's case. Shelton testified during his deposition, in substance, that the reason he engaged in certain transactions, including their timing, was that they were all part of the estate plan that was put together by lawyers who formed the Trust and SCIP. The attorneys Shelton retained to represent him in connection with the Trust and SCIP are the only source of information about the details of the Trust and SCIP and how the transactions fit into that estate plan. Thus, this factor weighs heavily in favor of allowing Cendant to depose Attorneys Polifka and Blattmachr.

### B. *The Lawyers' Role in Connection with the Matter on Which Discovery is Sought and in Relation to the Pending Litigation*

Cendant seeks discovery on the issue of Shelton's purpose in forming the Trust and SCIP and having them engage in certain transactions. As noted above, Attorneys Pol-

ifka and Blattmachr represented defendant Shelton in connection with the formation of these entities and certain transactions to which they were a party. Attorney Polifka works as a tax lawyer at Dornbush Schaeffer, which represents defendant Shelton in the instant cases, but Polifka is not involved in the instant cases. However, because her law firm is involved, this factor weighs against allowing her to be deposed. Attorney Blattmachr is currently in the trusts and estates department at Milbank Tweed, a firm which helped represent defendant Shelton in his criminal trial, but is not involved in the instant cases. Thus, this factor weighs in favor of allowing him to be deposed.

### C. *The Risk of Encountering Privilege and Work–Product Issues*

Defendant Shelton argues that deposing Attorneys Polifka and Blattmachr will inevitably run the risk of encountering attorney-client privilege issues. The attorney-client privilege attaches:

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived....

*United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961). Cendant concedes that the purpose of deposing Attorneys Polifka and Blattmachr is to explore the nature of their communications with defendant Shelton, but it argues that the attorney-client privilege does not provide a basis for refusal by either of them to answer questions related to the formation and/or operation of the Trust and SCIP because (1) the crime-fraud exception is applicable here, and (2) defendant Shelton has impliedly waived the attorney-client privilege with regard to such topics. The court agrees that the crime-fraud exception is applicable here.[3]

---

3. Based on the portions of Shelton's deposition testimony that have been submitted to the court, the court cannot conclude that Cendant has demonstrated that there was an implied waiver of the attorney-client privilege on Shelton's part by virtue of an affirmative act putting at issue an

element of a claim or defense. *See U.S. v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991) (recognizing an implied waiver of the attorney-client privilege as to "matters reasonably related to those introduced in direct examination," and citing cases in which an affirmative defense was

■ Communications that otherwise would be protected by the attorney-client privilege "are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum (Mark Rich)*, 731 F.2d 1032, 1038 (2d Cir.1984). In order for the crime-fraud exception to apply, the party seeking to overcome the privilege has the burden of "showing probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof." *Id.* at 1039. Probable cause exists when a "prudent person" would have "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.*

■ With respect to the first prong of the crime-fraud exception, the court previously found that probable cause exists to believe that defendant Shelton engaged in a fraudulent transfer of assets to the Trust and to SCIP in its Ruling on Cendant Corporation's Application for Prejudgment Remedy (the "Ruling") (Doc. No. 109). Specifically, the court concluded that "Cendant has shown there is probable cause to believe that it can prove by *clear and convincing evidence* that Kirk Shelton created and funded the Trust with actual intent to hinder, delay, or defraud creditors making claims arising out of his fraudulent conduct at CUC and then Cendant." (Ruling at 12) (emphasis added). In support of this conclusion, the court stated:

> At the time Kirk Shelton created the Trust, i.e. January 15, 1999, the fraudulent accounting at CUC and then Cendant had been, uncovered, resulting in huge losses to Cendant shareholders, and Kirk Shelton had been named as a defendant in shareholder actions in which the damages sought exceeded the value of his assets ... The court can take judicial notice of the

fact that in July 2005 the Trust held assets valued at $7.5 million, and that Kirk Shelton was the only apparent source of direct or indirect funding for the Trust.

(Ruling at 11–12). In addition, the court concluded:

> Cendant has shown there is probable cause to believe that it can prove by *clear and convincing evidence* that Kirk Shelton created SCIP and transferred assets to it to shelter the assets from creditors who might make claims arising out of his fraudulent conduct at CUC and then Cendant, and subsequently transferred his interest in SCIP to the Trust for the same purpose.

(Ruling at 13) (emphasis added). In support this conclusion, the court stated:

> Cendant has submitted evidence that SCIP was formed in September 1999 pursuant to an agreement of limited partnership, and that Kirk Shelton was the sole limited partner, having a 99.9% interest in the limited partnership. Moreover, the sole general partner was SCIP Management Company, Inc., the president of SCIP Management Company, Inc., was Kirk Shelton, and the principal place of business of both SCIP and SCIP Management Company, Inc. was the Residence [4] ... At the time Kirk Shelton created SCIP, the fraudulent accounting at CUC and then Cendant had been uncovered, resulting in huge losses to Cendant shareholders, and Kirk Shelton had been named as a defendant in shareholder actions in which the damages sought exceeded the value of his assets.

(Ruling at 12, 13). The court also stated:

> Kirk Shelton contends that his transfer to the Trust of a 59.9% limited partner interest in SCIP in September 2005 was not fraudulent because the transfer was made for the purpose of raising cash to help him meet his obligations to make a $15 million lump sum payment under the Restitution

asserted as examples of the privilege holder asserting "a claim that in fairness requires examination of protected communications"); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975) (identifying three factors common to this exception to the privilege: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this

affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.").

4. Shelton's residence in Darien, Connecticut.

Order in the Criminal Case. While it is true that the transfer to the Trust by Kirk Shelton of a 59.9% interest in SCIP served the purpose of helping him meet his obligation to make that $15 million lump sum payment, it also served another purpose. There has been no explanation proffered for the prior transfer by Kirk Shelton to the Trust of a 40% limited partner interest in SCIP, and the most logical inference in light of the circumstances is that he was seeking to shield that 40% interest in SCIP from the claims of his creditors. Thus, the manner in which Kirk Shelton disposed of the 59.9% interest served the purpose of consolidating in the Trust ownership of the entire 99.9% limited partner interest in SCIP; in view of the evidence Cendant has produced concerning Kirk Shelton's motivation for creating and funding the Trust and the nature of certain expenditures by the Trust, there is probable cause to believe that Cendant can demonstrate by clear and convincing evidence that transfer of the 59.9% interest to the Trust allowed Kirk Shelton to retain control over the assets of SCIP while further shielding his interest in SCIP from claims by his creditors. If one collapses the series of transactions engaged in by Kirk Shelton with respect to SCIP, Cendant can demonstrate that, at the beginning, Kirk Shelton personally held a 99.9% limited partner interest, which was totally exposed to claims of his creditors, and also controlled the .1% general partner interest in SCIP, and that, at the end, the Trust, which had been created by Shelton to shield assets from claims by his creditors, held that 99.9% limited partner interest and Kirk Shelton controlled or effectively controlled the .1% general partner interest.

(Ruling at 13–15). Based on the foregoing, the court finds that the first prong of the crime-fraud exception has been satisfied.

■ With respect to the second prong of the crime-fraud exception, Cendant has submitted evidence demonstrating that there is probable cause to believe that the assistance of each of these two attorneys was sought by defendant Shelton in furtherance of the fraud. Cendant has produced evidence that, notwithstanding Shelton's deposition testimony that he started his estate planning in 1997, he did not contact any attorney about estate planning until after the fraud at Cendant had been disclosed and shareholder claims were being asserted against him. Cendant seeks to depose Attorneys Polifka and Blattmachr as to the formation and operation of the Trust and SCIP, and Cendant has produced evidence that Shelton's primary purpose in forming and operating each of these entities was to use them as a vehicle for shielding his assets from creditors who were making claims against him while maintaining his control over those assets. Thus, Cendant has produced evidence that Shelton used the legal services of these two attorneys to form and/or operate vehicles for carrying out the fraud, and that establishes probable cause to believe that the assistance of each of these two attorneys with respect to the areas as to which Cendant seeks to question them was sought in furtherance of the fraud.

Defendant Shelton argues that the mere fact that he engaged in contemporaneous communications with Attorneys Polifka and Blattmachr while the alleged fraud was occurring is insufficient to satisfy the second prong of the crime-fraud exception. *See In re Grand Jury Subpoenas Duces Tecum (Corporate Grand Jury Witness)*, 798 F.2d 32, 34 (2d Cir.1986) ("The crime/fraud exception to the attorney-client privilege cannot be successfully invoked merely upon a showing that the client communicated with counsel while the client was engaged in criminal activity."). Also, defendant Shelton correctly notes that unless there is a purposeful nexus between the attorney-client communications and the perpetration of the alleged fraud, there is not a sufficient basis to invade the privilege. However, as discussed above, Cendant has produced evidence that the Trust and SCIP were formed and operated by Shelton as vehicles for carrying out the fraud. For the same reason, Shelton's reliance on *In re Richard Roe*, 68 F.3d 38 (2d Cir.1995), is unavailing. In *Roe*, the court held that the crime-fraud exception cannot be invoked simply because attorney-client communications have the potential to be relevant evidence in connection with a crime or fraud.

*Id.* at 40–41. Here, however, Cendant has produced evidence that suggests the communications themselves were "intended in some way to facilitate or conceal" fraudulent activity. *Id.* at 40.

■ Defendant Shelton contends that, even if the crime-fraud exception applies, it cannot be so broad as to cover *all* confidential communications with Attorneys Polifka and Blattmachr in the course of their legal representations of Shelton. Shelton argues that Cendant has failed to make a factual showing with respect to any *specific* communication Shelton had with his attorneys that was in furtherance of a fraud. In support of this argument, defendant Shelton relies primarily on three cases. In *Roe,* the Second Circuit held, "If production is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered." *Roe,* 68 F.3d at 41. Where the grand jury testimony is required, the court "shall specify the witness or witnesses required to give testimony, the scope of the examination permitted, and the basis, as described above with regard to the documents, for applying the crime-fraud exception." *Id.* In *In re Grand Jury Subpoena,* 419 F.3d 329, 344 (5th Cir.2005), the court held that an order compelling counsel to comply with a subpoena was overly broad because it "lacked the requisite specificity to reach only communications and documents no longer protected by the attorney-client and work product privileges." The court noted that the "proper reach of the crime-fraud exception when applicable does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *Id.* at 343. Finally, in *Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1417 (11th Cir.1994), the court stated that the crime-fraud exception should not provide a "reason to permit opponents of the privilege to engage in groundless fishing expeditions." *Id.* (quoting *U.S. v. Zolin,* 491 U.S. 554, 571, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)).

However, these valid principles of privilege law are inapposite to the facts in this case. Here, Cendant seeks to depose Attorneys Polifka and Blattmachr as to the formation and operation of the Trust and SCIP, and as discussed above, Cendant has shown there is probable cause to believe that the assistance of each of these two attorneys with respect to the specifically identified areas as to which Cendant seeks to question them was sought in furtherance of the fraud. *See In re Grand Jury Subpoena,* 419 F.3d. at 343 ("... this case does not present a situation where Appellant's entire criminal representation by Former Counsel was based upon or sought for the sole purpose of perpetuating a crime or fraud."); *id.* at 344, n. 12 ("Our holding regarding the limited scope of the crime-fraud exception does not preclude the potential disclosure of a client's entire file, in the proper case, upon the proper showing of the client's entire representation's being in furtherance of the alleged crime or fraud.").

Thus, Cendant has met its burden under the second-prong of the crime-fraud exception. Because the crime-fraud exception applies with respect to areas to which Cendant seeks to depose Attorneys Polifka and Blattmachr, the third *Friedman* factor weighs in favor of allowing Cendant to depose Attorneys Polifka and Blattmachr.

### D. *The Extent of Discovery Already Conducted*

Regardless of how much other discovery is conducted in this case, the depositions of Attorneys Polifka and Blattmachr would provide information on important issues as to which it appears it is not possible for Cendant to obtain information from any other source except defendant Shelton himself. Because of the nature of Cendant's claims against Shelton and the fact that there was a finding that Shelton committed perjury during the trial in the related criminal case, limiting Cendant to whatever information it can obtain from Shelton would not be appropriate, and such discovery should not be viewed as cumulative or duplicative. Thus, the fourth *Friedman* factor weighs in favor of allowing Cendant to depose Attorneys Polifka and Blattmachr.

## IV. CONCLUSION

After considering all of the relevant facts and circumstances of this case, the court concludes that ordering the proposed depositions of Attorneys Blattmachr and Polifka would not entail an inappropriate burden or hardship. Information they may have relating to the formation and/or operation of each of the Trust and SCIP is highly relevant to Cendant's claims, and information as to the formation and/or operation of each of the Trust and SCIP is not shielded by the attorney-client privilege or the work product doctrine because the crime-fraud exception applies.

It is so ordered.