**YOUNGER MFG. CO.,**

v.

**KAENON, INC., et al.; and related counterclaim.**

No. CV 07–3188–PA (RCx).

United States District Court, C.D. California.

Nov. 26, 2007.

_____

Jeffrey H. Grant, Spillane, Shaeffer, Aronoff, Bandlow LLP, Los Angeles, CA, for plaintiff.

Jennifer A. Trusso, Strading, Yocca, Carlson & Rauth, Newport Beach, CA, for Defendant.

## PROCEEDINGS: (IN CHAMBERS) ORDER DENYING DEFENDANTS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Court's Order of November 21, 2007, describes the nature of this litigation in detail, and there is no need to repeat that description. On November 13, 2007, plaintiff served defendants with notice of the deposition of Darren Rosenberg ("Darren"),[1] commencing on November 27, 2007, at 9:00 a.m. Declaration of Jennifer A. Trusso ("Trusso Decl.") ¶ 4, Exh. 2. The deposition notice did not require Darren to bring any documents with him to the deposition. *Id.* ¶ 4, Exh. 2.

Darren is the General Counsel and Chief Operating Officer of defendant Kaenon, Inc., a Delaware Corporation. Declaration of Darren Rosenberg ("Rosenberg Decl.") ¶ 1. Darren's duties include "investigating" any claims against Kaenon, "advising" Kaenon regarding such claims, interacting with litigation counsel and "directing" litigation strategies, and "negotiating contracts with third parties on behalf of Kaenon and advising Kaenon on such negotiations." *Id.* Additionally, Darren is "vice president," "founder" and "business partner" with his brother Steven Rosenberg, who is Kaenon's Chief Executive Officer and President.

On November 9, 2007, Steven testified on behalf of Kaenon at Kaenon's Rule 30(b)(6) deposition. Declaration of Jeffrey H. Grant ("Grant Decl.") ¶¶ 2–3, Exhs. A–B. During that deposition, Steven stated he and Darren were the persons with the most knowledge about SR–91 lenses. Grant Decl. ¶ 3, Exh. B at 11:10–16. Further, Steven testified:

Q Of those external coatings placed on the lens, do you know the elemental composition placed on them?

A I don't.

Q Do you know whether or not there's any coating or layer between the polarizing film and the polyurethane lens?

A I don't get involved in the manufacturing process of that particular product. But I'm aware that there is some adhesive that puts the two together and bonds it, if that's what you're referring to as a coating or a layer.

Q How do you know it's an adhesive?

A That's what they tell us.

Q Who is "they"?

A Tal[e]x.

Q When has Tal[e]x ever told you there is an adhesive put on the polarizing film?

A To my knowledge, when Younger created the infringement lawsuit against us. There was no reason for me to ask prior to that or have knowledge to that.

Q When did you have this conversation with Tal[e]x?

A I did not. I had it through counsel.

*Id.* at 9:12–10:6. Despite this testimony, Kaenon's counsel "prevented Steven Rosenberg from answering any further questions concerning the substance of that communication." Oppo. at 3:9–12. Additionally, Steven testified that Darren performs functions other than General Counsel. *Id.* at 15:17–16:2. For example, Darren sends purchase orders to Talex and "has the most knowledge of the negotiation of the manufacturing and supply agreement" between Kaenon and Talex. *Id.* at 15:17–20:5–15.

Lastly, plaintiff notes Kaenon submitted a declaration from Darren in support of Kaenon's motion for summary judgment, and in his declaration, Darren states "he sent to John Young 'SR–91' lenses in March 2007 for analysis"; however, John Young testified the lenses he tested were taken from a pool of lenses Kaenon provided in connection with earlier tests prior to this litigation, and not given to him by Darren. Oppo. at 4:13–18.

---

1. To avoid confusion, Darren Rosenberg and Steven Rosenberg will be referred to by their first names.

## DISCUSSION

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order. A protective order should be granted when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir.2002); *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.), *cert. denied,* 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries,* 966 F.2d at 476 (internal quotations marks omitted).

Kaenon's ex parte application seeks a protective order preventing the deposition of Kaenon's General Counsel Darren Rosenberg on the ground his deposition "is for the sole purpose of harassment and is unduly burdensome and expensive since ... any **relevant** information Mr. Rosenberg would have is clearly covered by the attorney work product doctrine and attorney client communication privilege." Ex Parte Appl. at 1:23–2:1 (emphasis in original). Younger, in its opposition to Kaenon's ex parte application, acknowledges it intends "to examine Darren Rosenberg to a limited extent concerning information falling within the work product doctrine because such information is relevant to this case and Younger ha[s] no other reasonable means for obtaining this discovery." Oppo. at 1:14–17.

The Court, having reviewed all documents, denies defendants' ex parte application for a protective order under Rule 26(c). As discussed below, Kaenon has not met its burden to show plaintiff's deposition of Darren is for harassment or that all the information plaintiff seeks from Darren is protected by the attorney-client privilege or work product doctrine.

As an initial matter, there is no Ninth Circuit precedent addressing the proper standards for the Court to consider in this situation. The Ninth Circuit Court of Appeals has not adopted the Eighth Circuit's reasoning in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327–28 (8th Cir.1986),[2] or the Second Circuit's reasoning in *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 71–72 (2d Cir.2003), and this Court finds the Second Circuit's reasoning to be the more persuasive. As the Second Circuit has held, whether the deposition of a lawyer should take place requires the Court to take into consideration various factors, including:

> the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.... Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

*In re Subpoena Issued to Dennis Friedman,* 350 F.3d at 72.

Here, Darren is a percipient witness or fact witness to communications between Kaenon and Talex about the manufacturing of SR–91 lenses, and instructions given to Talex about such manufacturing, and Kaenon's purchase of SR–91 lenses from Talex—all of which information is relevant to this action under Rule 26(b)(1). Moreover, since Talex is a Japanese company, Darren's deposition is the only way plaintiff can obtain this information in time to defend against Kaenon's motion for summary judgment. Further, Kaenon has represented to this Court that Talex, the manufacturer of the SR–91 lenses, has been manufacturing the lenses long before this litigation was considered; thus, con-

---

**2.** Kaenon has improperly cited a pre-2007 unpublished opinion, *Willer v. Las Vegas Valley Water District,* 176 F.3d 486 (Table) (9th Cir. 1999), for the proposition the Ninth Circuit follows *Shelton.* Unpublished Ninth Circuit cases issued before January 1, 2007 "may not need be cited to the courts of this circuit...." Ninth Circuit Rule 36–3(c).

versations between Darren and Talex may not come within the protection of the work product doctrine.[3] It also appears that the work product doctrine and attorney client privilege may not apply to such conversations—or even to discussions among Kaenon's staff—since Talex participated in such discussions. Specifically, Steven testified at his deposition, as follows:

Q  Have you had any communication with anyone at Tal[e]x concerning Younger Manufacturing Company?

A  Have I had any communication with Tal[e]x.

Q  Yes.

A  When they were here face to face for that last visit.

Q  What did you discuss with them about Younger?

A  Actually, I didn't particularly discuss anything with them as much as we did with counsel.

Q  Was Tal[e]x in the meeting with you when you were having this discussion concerning Younger?

A  With the rest of our team they were.

Grant Decl. ¶ 3 at 17:4–15. Since Talex is a third party, any protection afforded these discussions may have been waived.

Of course, Darren is also a fact witness about statements and declarations he made and statements about him made by others in declarations submitted by Kaenon. Thus, Darren's deposition is like the deposition of any other percipient or fact witness, and should not be prohibited under Rule 26(c), *Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 561–63 (2007); q*ad.inc. v. ALN Associates, Inc.*, 132 F.R.D. 492, 494 (N.D.Ill. 1990), and defendant Kaenon's ex parte application for a protective order should be denied. However, "[t]o the extent that [Kaenon] believes that the [plaintiff's] questions to [Darren] during his deposition impinge on the work product doctrine or the attorney-client privilege, [Kaenon] may make a proper objection." *Boston Edison*, 75 Fed.Cl. at 563.

---

**3.** In its previous Order of November 21, 2007, this Court explained the work product doctrine and attorney-client privilege in detail; thus, there

**ORDER**

Kaenon's ex parte application for a protective order should be denied.

is no need to again explain these privileges or waiver of such privileges.