EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Alvear Maldonado<br><br>Recurrido<br><br>v.<br><br>Ernst & Young LLP<br><br>Peticionario | Certiorari<br><br>2014 TSPR 127<br><br>191 DPR ____ |

Número del Caso: CC-2013-128

Fecha: 27 de octubre de 2014

Tribunal de Apelaciones:

    Región Judicial de San Juan

Abogado de la Parte Peticionaria:

    Lcdo. José J. Santiago Meléndez

Abogado de la Parte Recurrida:

    Lcdo. Javier Rivera Longchamps

Materia: Procedimiento Civil – Descubrimiento de prueba: deposición a abogado que trabaja en el mismo bufete que el abogado de la parte contraria; extensión de lo resuelto en  Ades v. Zalman (1984) Canon 22 de Ética Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Alvear Maldonado

    Recurrido

      v.                  CC-2013-0128

Ernst & Young LLP

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 27 de octubre de 2014.

Nos corresponde resolver si una parte, durante el descubrimiento de prueba, puede tomarle una deposición a un abogado que trabaja en el mismo bufete que el abogado de la parte contraria sin demostrar justa causa. Para contestar esa interrogante, debemos sopesar si extendemos lo resuelto en Ades v. Zalman, 115 DPR 514 (1984), a los hechos que nos ocupan. Luego de analizar el asunto con detenimiento, concluimos que procede extender a este caso lo resuelto en Ades v. Zalman, íd.

I

El Sr. Víctor Alvear Maldonado presentó una demanda en contra de Ernst & Young, LLP (EY), en la que reclamó al amparo de la Ley de Procedimiento Especial Sumario, Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 et seq., la suma de $99,800 por concepto de unas horas que trabajó, pero supuestamente no le fueron compensadas.

EY contestó que el tribunal carecía de jurisdicción porque el señor Alvear Maldonado no había agotado ciertos remedios de mediación y arbitraje. Alegó que la compañía tenía una política que obligaba a los empleados a resolver las disputas en un procedimiento de arbitraje. Sostuvo que el señor Alvear Maldonado era empleado exento y, como tal, le aplicaba esa política.

Ante ello, el señor Alvear Maldonado alegó que era socio de EY y, por lo tanto, no le aplicaba la política de arbitraje dirigida a los empleados. EY replicó que, de acuerdo a los modelos de sus contratos de sociedad, la política de arbitraje también aplicaba a sus socios.

El señor Alvear Maldonado presentó una moción, fundamentada en los Cánones 21 y 22 de Ética Profesional, 4 LPRA Ap. IX, para descalificar al bufete Fiddler, González y Rodríguez (FGR), quien fungía como representante legal de EY. El señor Alvear Maldonado alegó que cuando fue socio de EY sostuvo varias reuniones con abogados de FGR en las que compartió información confidencial que en el presente pleito pretendían

utilizar en su contra. Adujo, además, que se proponía citar como testigo al Lcdo. Jorge M. Cañellas Fidalgo, quien fue socio de EY durante el mismo tiempo que el señor Alvear Maldonado fungió como socio de la compañía y, además, trabajaba como abogado en FGR.

EY alegó que no procedía la descalificación del bufete FGR. Sostuvo que no existía un conflicto de interés porque FGR nunca tuvo una relación de abogado-cliente con el señor Alvear Maldonado en su carácter personal, sino con EY.

El foro primario resolvió que no existía un conflicto de interés bajo el Canon 21, supra, y denegó la moción de descalificación bajo ese fundamento. Sin embargo, permitió cierto descubrimiento de prueba para justificar la presentación del licenciado Cañellas Fidalgo como testigo del señor Alvear Maldonado.

Posteriormente, el señor Alvear Maldonado presentó una solicitud de producción de documentos y requerimiento de admisiones que EY objetó parcialmente por entender que excedía lo pautado por el tribunal.

Ante la objeción de EY, el señor Alvear Maldonado alegó que, de acuerdo a los documentos que fueron entregados por EY, el señor Alvear Maldonado era socio de la compañía y no empleado. Sostuvo que el licenciado Cañellas Fidalgo, como excompañero socio de EY, podía testificar sobre este hecho y sobre otros asuntos

relacionados a la controversia. El señor Alvear Maldonado reiteró la solicitud de descalificación.

EY alegó que la descalificación no procedía porque no se demostró, como exige el Canon 22 de Ética Profesional, supra, que el testimonio que emitiría el licenciado Cañellas Fidalgo sería perjudicial para el cliente de FGR. Por otra parte, sostuvo que la controversia sobre la cual testificaría el licenciado Cañellas Fidalgo se había tornado académica porque EY aceptó que el señor Alvear Maldonado era socio y no empleado.

El Tribunal de Primera Instancia determinó que dado que EY aceptó que el señor Alvear Maldonado era socio, la utilización del licenciado Cañellas Fidalgo para probar ese hecho se había tornado académica. El señor Alvear Maldonado solicitó una reconsideración de ese dictamen y argumentó, en lo pertinente, que el testimonio del licenciado Cañellas Fidalgo no se limitaría a la controversia sobre su clasificación como socio, sino que atendería también otros asuntos del caso. Ante ello, el foro primario permitió que el señor Alvear Maldonado sometiera al licenciado Cañellas Fidalgo a una deposición y ordenó la producción de una serie de documentos.

EY se opuso a la toma de deposición y a la producción de documentos por dos razones. Primero, entendía que la mayoría de los temas a cubrirse en la deposición tenían el propósito de probar algo que ya no

estaba en controversia, a saber, el carácter de socio del señor Alvear Maldonado. Segundo, sostuvo que el testimonio del licenciado Cañellas Fidalgo no era indispensable y que la información que se quería obtener a través de su testimonio podía obtenerse por conducto de otros testigos u otros medios menos onerosos. En esencia, EY argumentó que la norma pautada por el Tribunal Supremo en Ades v. Zalman, 115 DPR 514 (1984), para los abogados de las partes, aplicaba igualmente a los socios de ese abogado.

El 1 de octubre de 2012, el foro primario reiteró que el señor Alvear Maldonado podía deponer al licenciado Cañellas Fidalgo. Destacó el marco amplio y liberal del descubrimiento de prueba en nuestro ordenamiento jurídico.

Inconforme, EY acudió ante el Tribunal de Apelaciones vía una petición de certiorari. Ese foro denegó la expedición del auto. Nuevamente inconforme, EY acudió ante este Tribunal. Expedimos el auto de certiorari solicitado por EY. Con el beneficio de la comparecencia de ambas partes, resolvemos la controversia planteada.

II

La Regla 27.1 de Procedimiento Civil, 32 LPRA Ap. V, "no contiene limitaciones respecto a quiénes se les puede tomar deposiciones". Ades v. Zalman, supra, pág. 518. Por el contrario, la regla establece que "cualquier parte

podrá tomar el testimonio de cualquier persona". Regla 27.1 de Procedimiento Civil, supra. Esa liberalidad tiene su base en las características del descubrimiento de prueba.

El descubrimiento de prueba se extiende a cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito. Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V. Véanse: Berrios Falcón v. Torres Merced, 175 DPR 962 (2009); Rivera y otros v. Bco. Popular, 152 DPR 140, 152 (2000); Ortiz v. ELA, 125 DPR 65 (1989). Las reglas que lo rigen "se basan en el concepto básico de que antes del juicio toda parte en la litigación tiene el derecho a obtener el descubrimiento de toda la información que esté en posesión de cualquier persona". J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 835. Véase, además, SLG Valencia v. García García, 187 DPR 283 (2012).

Ahora bien, en ocasiones hemos encontrado limitaciones al descubrimiento de prueba cuando razones de política pública así lo aconsejan. En Ades v. Zalman, supra, aun cuando aclaramos que la condición de ser abogado no crea una inmunidad contra la toma de deposiciones, resolvimos que cuando una parte intenta deponer al abogado de la parte contraria debe probar que existe justa causa para ello. Es decir, la parte que interesa la deposición debe probar que "la información

que se busca descubrir a través del abogado [no] es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos". Id., pág. 525.

En ese caso destacamos varias razones por las cuales debíamos limitar de esa forma las deposiciones al abogado de la parte contraria: no hacerlo 1) "conllevaría el agudo riesgo de añadirle un elemento más a las tensiones que se crean en un proceso adversativo entre los representantes legales", id., pág. 521; 2) colocaría al abogado en la compleja situación de ser defensor y testigo a la misma vez; 3) "puede convertirse en un medio mortificante, abusivo y opresivo no solo hacia ese abogado, sino hacia su representado", id., pág. 523; y 4) la discusión de cuál pregunta soslaya el privilegio abogado-cliente dilataría innecesariamente el curso normal del pleito. Id., pág. 525.

Lo resuelto en Ades v. Zalman, supra, realmente era parte de una corriente jurisprudencial que intentaba armonizar la amplitud del descubrimiento de prueba con los conflictos que conllevaba la deposición al abogado de la parte contraria. Véanse: In re Arthur Treacher's Franchisee Litigation, 92 FRD 429 (E.D. Pa. 1981), Draney v. Wilson, 30 Fed. R. Serv.2d 960 (D. Ariz. 1980), Walker v. United Parcel Services, 87 FRD 360 (E.D. Pa. 1980); In re Penn Central Litigation, 61 FRD 453 (S.D.N.Y. 1973). Véase, además, Timothy Flynn, Jr., On "Borrowed Wits": A

proposed Rule for Attorney Depositions, 93 Colum. L. Rev. 1956, 1969-1973 (1993).

El tema alcanzó su cúspide en Shelton v. American Motors Corporation, 805 F.2d 1323 (8vo Cir. 1986), dos años después de nosotros resolver Ades v. Zalman, supra. El Tribunal de Apelaciones Federal para el Octavo Circuito resolvió que procede la deposición del abogado de la parte contraria solamente si la parte solicitante demuestra tres requisitos: 1) que no existe otro medio para obtener la información que se busca, 2) que esa información es relevante y no privilegiada y 3) que la información es crucial para la preparación del caso. Shelton v. American Motors Corporation, supra, pág. 1327. Nótese que esa regla es muy parecida a la que adoptamos en Ades v. Zalman, supra. De hecho, es un poco más estricta.[1]

Shelton v. American Motors Corporation, supra, no tardó en convertirse en el caso normativo en la jurisdicción federal. Véase 7 *Moore´s Federal Practice*, sec. 31.03[2] (Matthew Bender 3d Ed.). Numerosos tribunales adoptaron la misma norma o una parecida. 8A Wright, Miller & Cooper, Federal Practice and Procedure 3d Sec. 2102 (2010). Véanse, por ejemplo: Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621 (6to Cir. 2002); Thiessen v. GE Capital Corp., 255 F.3d 1221 (10mo Cir.

---

[1] Valga aclarar que no proponemos adoptar la norma de Shelton v. American Motors Corporation, supra. Esa no es la controversia en este caso.

2001); <u>United States v. All Funds on Deposit</u>, 801 F. Supp. 984 (E.D.N.Y. 1992); <u>Harriston v. Chicago Tribune Co.</u>, 132 FRD 232 (N.D. Ill. 1990); <u>American Cas. Co. v. Krieger</u>, 160 FRD 582 (S.D. Cal. 1995). Véase, por el contrario, <u>QAD.Inc. v. ALN Associates, Inc.</u>, 132 FRD 492, 495 (N.D. Ill. 1990), para una crítica a <u>Shelton</u>.[2]

El Tribunal de Apelaciones para el Octavo Circuito, sin embargo, le ha dado una interpretación restrictiva al caso de <u>Shelton v. American Motors Corporation</u>, <u>supra</u>, y se ha negado a aplicarlo a otras situaciones de hecho. *Moore´s Federal Practice*, <u>op. cit.</u>, sec. 31.03[2]. sec. 31.03. En <u>Pamida v. E.S. Originals</u>, 281 F.3d 726, 730 (8vo Cir. 2002), el tribunal permitió una deposición a los abogados de la parte contraria porque la información que se quería descubrir era sobre un pleito anterior ya terminado, la información era crucial para el caso pendiente y la información solo era conocida por los abogados. ("<u>Shelton</u> was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the

---

[2] Algunos tribunales han adoptado análisis distintos. Véase, por ejemplo, <u>In re Subpoena Issued to Dennis Friedman</u>, 350 F.3d 65 (2do Cir. 2003) ("Rule 26 require[s] a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship". Véase, además, <u>Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578</u>, 130 FRD 348 (D.N.J. 1990).

information known only by the attorneys regarding the prior concluded case was crucial").

En ese caso, la corporación A fue demandada por violar unas patentes. Después que acabó ese pleito, la corporación A inició una acción de daños en contra de la compañía B por hechos relacionados. La corporación A utilizó los mismos abogados para ambos pleitos. Durante el descubrimiento de prueba, la compañía B solicitó una deposición a los abogados de la corporación A para descubrir información del pleito anterior y del pleito pendiente. El Tribunal de Primera Instancia permitió la deposición para descubrir todo lo relacionado al caso anterior y prohibió lo relacionado al pleito pendiente. El Tribunal del Circuito de Apelaciones confirmó y especificó que el propósito principal de Shelton era evitar que el abogado de una parte revelara la estrategia de litigio de un caso pendiente y no la información importante de un caso pasado. Id., pág. 730. ("the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case").

Al igual que el Octavo Circuito, otros tribunales han interpretado a Shelton limitadamente y se han negado a extender esa protección. *Moore´s Federal Practice*, op cit. Algunos tribunales, fundamentados en Pamida v. E.S. Originals, supra, aplican la protección de Shelton solamente  cuando a quien se le tomará la deposición es

el abogado litigante ("trial or litigation counsel"), es decir, el abogado que está directamente relacionado a la representación legal de una de las partes en el caso. Véanse: US v. Phillip Morris, Inc., 209 FRD 13, 18 (D.D.C. 2002) ("[Shelton] only applies to depositions of trial counsel or counsel directly involved in representing a party in the case"); Sterne Kessler Goldstein v. Eastman Kodak Company, 276 FDR 376 (D.D.C. 2011); Zimmerman v. State, 114 So.3d 446 (FL 2013). Otros tribunales también han aplicado la norma de Shelton cuando la línea de preguntas que se hará en la deposición revelará la estrategia legal del caso pendiente. Véase US v. Phillip Morris, Inc., supra; Sterne Kessler Goldstein v. Eastman Kodak Company, supra. Véase, además, Scott Tolchinsky, Deposition of Opposing Counsel in Patent Litigation, 19 Geo. J. Legal Ethics 993, 996 ("[in Pamida] the court appeared to limit the use of the Shelton factors to instances in which the attorney to be deposed is either counsel in the present litigation or the subject matter of the deposition would lead to the disclosure of the attorney's litigation strategy").

Algunos piensan que el término de "trial or litigation counsel" incluye no solo al abogado que es representante directo o compareció formalmente al pleito pendiente, sino que incluye también a aquellos abogados que han asesorado en la estrategia del litigio. Véase, por ejemplo, Douglas R. Richmond, Depositions of Other

Lawyers, 81 Tenn. L. Rev. 47, 65-66 (2013) ("the major determinant should be the lawyer deponent´s involvement in the litigation, however characterized").

En hechos muy similares al caso bajo nuestra consideración, se ha resuelto que la norma de Shelton no aplica a un abogado que es miembro del mismo bufete que el abogado de la parte contraria que está a cargo del caso. Ellipsis, Inc. v. The Color Works, Inc., 227 FRD 496 (W.D. Tenn. 2005). Véase, además, Wright, Miller & Cooper, supra, pág. 448. En ese caso se concluyó que el miembro del bufete a quien se le tomaría la deposición no era el abogado a cargo del juicio o del litigio ("trial or litigation counsel"). Id., pág. 497.

## III

El Tribunal de Primera Instancia resolvió que procedía la deposición del licenciado Cañellas Fidalgo. Por su parte, EY alegó que eso es incorrecto y nos solicita, en esencia, que extendamos la norma de Ades v. Zalman, supra, a un abogado que es miembro del mismo bufete que el abogado que compareció al pleito. Por los fundamentos que elaboramos a continuación, procede extender esa norma a los hechos que nos atañen.

El problema que identificamos en Ades v. Zalman, supra, está presente parcialmente cuando se interesa deponer a un miembro del bufete del abogado de récord de la otra parte. Nadie puede dudar que permitir la deposición de un miembro del bufete del abogado de récord

de la otra parte "conllevaría el agudo riesgo de añadirle un elemento más a las tensiones que se crean en un proceso adversativo entre los representantes legales". Íd., pág. 521. También podría convertirse en un medio mortificante, abusivo y opresivo no solo hacia el abogado al que se pretende deponer, sino hacia el cliente o el bufete mismo. Íd., pág. 523.[3] Por último, la discusión de cuál pregunta soslaya el privilegio abogado-cliente dilataría innecesariamente el curso normal del pleito. Íd.

Es evidente que la línea jurisprudencial federal antes citada va dirigida a permitir la deposición en controversias como la de autos. Pamida v. E.S. Originals, supra; Shelton v. American Motors Corporation, supra; Moore´s Federal Practice, supra, sec. 31.03[2]; Wright, Miller & Cooper, Federal Practice and Procedure, supra, sec. 2102. Sin embargo, existe una diferencia abismal entre la jurisdicción federal y la nuestra que abona a nuestra conclusión de extender a este caso la norma de Ades v. Zalman, supra.

Adviértase que la línea reseñada de casos federales está enmarcada en la Regla modelo 3.7 de conducta profesional de la American Bar Association, que indica:

*Rule 3.7 Lawyer As Witness*

---

[3] Nótese que el término "bufete" incluye las grandes firmas que pueden emplear cientos de abogados y las oficinas más pequeñas que emplean pocos letrados.

> *(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:*
> *(1) the testimony relates to an uncontested issue;*
> *(2) the testimony relates to the nature and value of legal services rendered in the case; or*
> *(3) disqualification of the lawyer would work substantial hardship on the client.*
> *(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.*
>
> Center for Professional Responsibility (American Bar Association), <u>Model Rules of Professional Conduct</u>, 2010, pág. 102.

Como se puede observar, el inciso (b) de esta regla **<u>no obliga</u>** a que un abogado litigante renuncie a la representación de un cliente cuando se entera de que un abogado de su firma puede ser llamado a declarar. La excepción a esa norma se configura cuando el abogado litigante incurre en un conflicto de intereses que le impida continuar con la representación legal. <u>Model Rules of Professional Conduct</u>, <u>supra</u>, pág. 104.

Distinto a la Regla modelo 3.7, <u>supra</u>, nuestro Canon 22 de Ética Profesional, 4 LPRA Ap. IX, establece que "un abogado debe renunciar a la representación de su cliente cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma puede ser llamado a declarar en contra de su cliente". Como se aprecia, este precepto abarcador impone al abogado litigante el deber de renunciar a la representación <u>cuando se entera</u> que un abogado de su firma <u>puede ser</u> llamado a declarar. Sin

duda, este Canon aplica a los socios o compañeros del abogado que van a testificar en el juicio y no en una deposición. Después de todo, la deposición no es un testimonio; es simplemente un mecanismo de descubrimiento de prueba. Véase Rafael Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 5ta ed., Lexis Nexis, 2010, pág. 308 ("[e]l hecho de que se tome una deposición no convierte al deponente en testigo de la parte que la toma, pero cuando se somete como evidencia de esa parte, sí se le constituye en testigo propio"). Véase, además, In re Alverio Sánchez, 172 DPR 181, 190-191 (2007). Ahora bien, es innegable que, a la luz de la norma ética abarcadora que contiene el Canon 22 de Ética Profesional, supra, siempre existe el riesgo de que se deponga al miembro de un bufete con el propósito de hostigar y, en la eventualidad, solicitar la descalificación de ese bufete.

Así pues, como la mayoría de los problemas que reconocimos en Ades v. Zalman, supra, están presentes en este caso y existe el riesgo de que se deponga a un miembro del bufete con el propósito de solicitar su descalificación conforme al Canon 22 de Ética Profesional, supra, es necesario revocar el dictamen del Tribunal de Primera Instancia. Procede extender lo resuelto en Ades v. Zalman, íd., a esta controversia, en que se interesa deponer a un abogado que trabaja en el mismo bufete que el abogado litigante de la parte

contraria. En situaciones como esta, es necesario que la parte que solicita la deposición demuestre la existencia de justa causa, que consiste en probar que "la información que se busca descubrir a través del abogado [no] es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos". Íd., pág. 525.

Aquí ya se resolvió el asunto por el cual inicialmente se iba a deponer al licenciado Cañellas Fidalgo, a saber, si el señor Alvear Maldonado era socio o empleado de EY. Sin embargo, el señor Alvear Maldonado especificó posteriormente que utilizaría la deposición para descubrir otra información relacionada a la controversia. Hay alegaciones en el expediente que apuntan a que el licenciado Cañellas Fidalgo puede tener información pertinente a la controversia, pues aparentemente fue socio de EY durante el tiempo en que surgió la controversia del caso. Si se demuestra la justa causa, conforme con lo resuelto en Ades v. Zalman, supra, procede deponer al licenciado Cañellas Fidalgo. Después de todo, "un amplio y liberal descubrimiento de prueba es la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanto mina la fe del pueblo en el sistema judicial". Lluch v. España Service Sta., 117 DPR 729, 743 (1986).

Si durante la deposición surge algún conflicto relacionado a privilegios, las partes deberían actuar conforme a la Regla 27.7 (b)(4) de Procedimiento Civil,

32 LPRA Ap. V, que permite que un deponente se niegue, con el propósito de preservar un privilegio, a contestar una pregunta. Además, las partes siempre tendrían disponibles los remedios dispuestos en la Regla 23.2 de Procedimiento Civil, _supra_, que permite que el tribunal emita cualquier orden para proteger a una parte de hostigamiento, perturbación u opresión, así como de cualquier molestia o gasto indebido.

IV

Por otro lado, EY se embarca en su alegato en una discusión sobre por qué no procede la descalificación de FGR. En esencia, alega que tan pronto el foro primario autorizó la deposición del licenciado Cañellas Fidalgo, de acuerdo al Canon 22 de Ética Profesional, _supra_, FGR estaría obligado a renunciar al caso o a ser descalificado. Sin embargo, la discusión sobre este punto es prematura.

Como ya indicamos, el Canon 22 de Ética Profesional, _íd._, aplica cuando un abogado litigante se entera de que un abogado de su firma <u>podría ser llamado a declarar en el juicio</u>, no en la deposición que es un simple mecanismo de descubrimiento de prueba. <u>In re Alverio Sánchez</u>, _supra_, págs. 190-191; R. Hernández Colón, _op cit._, pág. 308.

Más importante aún, para que proceda la descalificación, lo que se va a testificar en el juicio tiene que ser en contra del cliente del socio. Canon 22

de Ética Profesional, supra. Véanse, Culebras Enterprises Corporation v. Rivera-Rios, 846 F.2d 94 (1er Cir. 1988); Charles W. Wolfram, Modern Legal Ethics, Minnesota, West Publishing Co., 1986, págs. 375-390; American Bar Association, Annotated Model Rules of Professional Conduct, Chicago, ABA, 2003, págs. 381-391.

En esta etapa de los procedimientos desconocemos si el licenciado Cañellas Fidalgo estará sujeto a una deposición, o si testificará en el juicio. Luego de que se despejen esas dudas, el Tribunal de Primera Instancia estará en posición de atender la controversia sobre la descalificación de FGR.

V

Por los fundamentos antes expuestos, dejamos sin efecto el dictamen del Tribunal de Primera Instancia. Procede que el Sr. Víctor Alvear Maldonado demuestre justa causa, conforme con lo resuelto en Ades v. Zalman, supra, para deponer al Lcdo. Jorge M. Cañellas Fidalgo.

Se dictará Sentencia de conformidad.


                                        RAFAEL L. MARTÍNEZ TORRES
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Víctor Alvear Maldonado

      Recurrido

         v.                             CC-2013-128

Ernst & Young LLP

      Peticionaria


SENTENCIA


En San Juan, Puerto Rico, a 27 de octubre de 2014.


Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, dejamos sin efecto el dictamen del Tribunal de Primera Instancia. Procede que el Sr. Víctor Alvear Maldonado demuestre justa causa, conforme con lo resuelto en Ades v. Zalman, supra, para deponer al Lcdo. Jorge M. Cañellas Fidalgo.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. La Jueza Presidenta señora Fiol Matta disiente por entender que el Tribunal de Primera Instancia actuó correctamente al permitir el descubrimiento de prueba solicitado por el demandante. En dos ocasiones el tribunal autorizó la toma de deposición al licenciado Cañellas con el fin único de que el demandante pudiera justificar la presentación del licenciado como testigo. De esta manera, el tribunal estaría en posición de resolver la solicitud de

descalificación que quedaba pendiente bajo el Canon 22. En este caso, y ante el desarrollo particular del descubrimiento de prueba entre las partes, confirmaría la determinación de los tribunales inferiores.

El Juez Asociado señor Estrella Martínez disiente con opinión escrita.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Alvear Maldonado

    Recurrido

       v.                              CC-2013-128       Certiorari

Ernst & Young, LLP

    Peticionario

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 27 de octubre de 2014.

Ante la presentación simultánea de una solicitud de descalificación, por alegadas violaciones al Código de Ética Profesional, 4 LPRA Ap. IX, y una solicitud de deponer a un abogado que es miembro del mismo bufete que representa a la parte contraria, procedía pautar un análisis integral que considerara las implicaciones de la deposición en el contexto del mandato ético contenido en el Canon 22 del Código de Ética Profesional, *supra.*

Por entender que el escrutinio adoptado por este Tribunal está reñido con la economía procesal; es contrario a la tendencia jurisprudencial que la propia mayoría reconoce; debilita el alcance del

Código de Ética Profesional, *supra*, y más importante aún, facilita el hostigamiento entre los litigantes y la utilización de tácticas dilatorias, disiento.

**I**

Los hechos que dan origen a la presente controversia surgen como consecuencia de una demanda instada por el Sr. Víctor Alvear Maldonado (señor Alvear Maldonado) contra Ernst & Young, LLP (Ernst & Young). En ésta, el señor Alvear Maldonado reclamó el pago de un dinero por concepto de horas trabajadas y no compensadas.

Desde el inicio del pleito, Ernst & Young solicitó ventilar el reclamo del señor Alvear Maldonado en un proceso de arbitraje al señalar que éste estaba obligado por ser empleado de la empresa. Por su parte, el señor Alvear Maldonado se opuso al señalar que era socio y no procedía ventilar su reclamo en un procedimiento de arbitraje. Sin embargo, Ernst & Young destacó que aún si fuera socio el contrato de sociedad también compelía a los socios a acudir a procedimientos de mediación y arbitraje en caso de presentarse una disputa. A raíz de ello, sostuvo que el Tribunal de Primera Instancia carecía de jurisdicción para atender el recurso presentado.

Trabada la controversia en torno al cargo ejercido por el señor Alvear Maldonado en la empresa, éste radicó una *Moción en solicitud de orden de evidencia documental y solicitud de descalificación de representación legal*

con el propósito dual de allegar información que evidenciara su alegación y servir de vehículo para la descalificación de la representación legal de Ernst & Young. En primer lugar, argumentó que como socio participó en reuniones con abogados del bufete Fiddler, González & Rodríguez, PSC (Bufete), despacho que representa legalmente a Ernst & Young. Arguyó que en éstas acontecieron intercambios de información confidencial que podría ser utilizada en su contra, por lo que se había constituido un conflicto de intereses en contravención al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21. A su vez, afirmó que en el Bufete labora el Lcdo. Jorge M. Cañellas Fidalgo (licenciado Cañellas Fidalgo), quien para las fechas relevantes de su reclamo se desempeñó como socio de Ernst & Young e indicó que se proponía citarlo como testigo. El señor Alvear Maldonado especificó que el testimonio del licenciado Cañellas Fidalgo versaría sobre el cargo que ocupaba en la empresa y contribuiría a la dilucidación de la controversia. Por ende, señaló que se consuma una violación al Canon 22 del referido Código de Ética Profesional, 4 LPRA Ap. IX, C. 22.

Luego de celebrar una vista, el foro primario concluyó que no procedía la descalificación del Bufete al amparo del Canon 21 por entender que no existía prueba suficiente para sostener la existencia de intereses encontrados. Empero, no atendió el reclamo a base del

Canon 22 hasta que finalizara el descubrimiento de prueba.

A tenor con la Resolución emitida, el señor Alvear Maldonado cursó a Ernst & Young una *Solicitud de Producción de Documentos y Requerimiento de Admisiones*. Ernst & Young la objetó. Con el fin de disipar sus diferencias, las partes pactaron una producción limitada de documentos. Además, Ernst & Young estipuló que el señor Alvear Maldonado era socio de la empresa.

A pesar de lo pactado, Ernst & Young incumplió al no producir la evidencia acordada. Como consecuencia, el señor Alvear Maldonado reiteró su solicitud de descalificación. Señaló que el descubrimiento de prueba parcial obtenido demostraba que el licenciado Cañellas Fidalgo y él ejercieron como socios durante el periodo por el cual reclama y afirmó que su intención de incluir al licenciado como testigo en el pleito quedaba sustentada.

Ernst & Young replicó la solicitud presentada y arguyó que el descubrimiento de prueba cursado era en sumo oneroso, la solicitud presentada no justificaba la comparecencia del licenciado como testigo, no se había establecido que el testimonio a ofrecerse fuese contrario a los intereses de Ernst & Young y, que a raíz de que se estipuló que el señor Alvear Maldonado era socio, el asunto se había tornado académico. Asimismo, admitió

haber concertado un acuerdo en el que se comprometió a entregarle al señor Alvear Maldonado ciertos documentos.

Atendido el asunto, el foro primario determinó que cualquier testimonio para establecer que el señor Alvear Maldonado era socio se había tornado académico. Ante este dictamen, el señor Alvear Maldonado resaltó que el testimonio del licenciado Cañellas Fidalgo es indispensable para establecer sus reclamos y posee un efecto pernicioso para Ernst & Young. Alegó que con el testimonio se demostraría que como socio no procedía dilucidar su controversia en un proceso de arbitraje y para demostrar la falsedad de los reclamos de Ernst & Young. Así, solicitó al foro primario que decretara la continuación, y eventual culminación, del descubrimiento de prueba ordenado y concediera la deposición del licenciado Cañellas Fidalgo.

Luego de varios trámites procesales, el Tribunal de Primera Instancia concedió un término para efectuar una orden de citación con miras a deponer al licenciado Cañellas Fidalgo. Ante ello, el señor Alvear Maldonado presentó un *Escrito notificando temas que serán cubiertos durante la deposición del Lcdo. Jorge Cañellas y documentos que deberán ser entregados previo a la misma.* Ernst & Young se opuso enérgicamente por entender que la información que se pretende obtener al deponer al licenciado Cañellas Fidalgo no era indispensable y podía ser obtenida empleando medios alternos.

Considerado el hecho de que no se cumplió con el descubrimiento de prueba acordado y la prueba obtenida por el señor Alvear Maldonado, el Tribunal de Primera Instancia autorizó la deposición al concluir que los temas señalados resultaban pertinentes a la controversia y ordenó la producción de los documentos acordados.

Inconforme, Ernst & Young acudió ante el Tribunal de Apelaciones. El foro intermedio denegó el auto solicitado. Así las cosas, Ernst & Young presentó un recurso de *certiorari* ante este Tribunal y cuestionó, en síntesis, que se permitiera la deposición del licenciado Cañellas Fidalgo. Particularmente, señaló que la orden de deposición debió ser examinada en el contexto de una adjudicación de solicitud de descalificación por razón de que se habrá de llamar como testigo en el caso a un abogado miembro del Bufete que lo representa. Véase *Alegato de la Parte Peticionaria*, pág. 8.

Trabada la controversia y expedido el caso, establecemos nuestra posición para adjudicar la polémica ante esta Curia.

**II**

Nuestro ordenamiento procesal civil consagra una multiplicidad de normas dirigidas a establecer un procedimiento a través del cual las personas, naturales o jurídicas, puedan dirimir sus controversias ante un foro judicial. Particularmente, se han esgrimido normas destinadas a regular los contornos del procedimiento de

descubrimiento de prueba con el fin de colocar a las partes en posición de sustentar sus alegaciones, facilitar la obtención de la evidencia y la búsqueda de la verdad, y evitar sorpresas e inconvenientes durante la tramitación de un juicio. Alvarado v. Alemañy, 157 DPR 672 (2002); Vicenti v. Saldaña, 157 DPR 37 (2002); Alfonso Bru v. Trane Export, Inc., 155 DPR 158 (2001). Cónsono con este propósito, se ha promulgado la creación y desarrollo de un descubrimiento de prueba caracterizado por su flexibilidad y liberalidad, y dirigido a asegurar un procedimiento justo y equitativo que responda a las particularidades y complejidades de cada caso. S.L.G. Valencia v. García García, 187 DPR 283 (2012); Vicenti v. Saldaña, supra; Alfonso Bru v. Trane Export, Inc., supra.

La liberalidad propia del descubrimiento de prueba ha incentivado la implantación de mecanismos que fomentan el intercambio rápido y efectivo de la evidencia en un juicio. En consecución de lo expuesto, el ordenamiento avala la creación de pactos entre las partes con el propósito de concertar las particularidades del proceso de descubrimiento de prueba. Estos pactos posibilitan un sistema caracterizado por la cooperación, constituyen acuerdos válidos, vinculantes y exigibles e instauran el deber inexorable de cumplir. Vellón v. Squibb Mfg. Inc., 117 DPR 838 (1986); Lluch v. España Service Sta., 117 DPR 729 (1986); J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, 2011, T. III, pág.

926. De este modo, el mutuo consentimiento de las partes puede alterar el procedimiento ordinario de descubrimiento en la medida en que esta modificación no se encuentre proscrita por el ordenamiento vigente. Vellón v. Squibb Mfg. Inc., *supra*.

A pesar de la liberalidad que caracteriza al descubrimiento de prueba, estatutaria y jurisprudencialmente se han erigido criterios que delimitan su alcance con el fin de evitar que éste se torne en un procedimiento opresivo, intolerante o que cause molestias indebidas a las partes. Vicenti v. Saldaña, *supra*; Cuevas Segarra, op. cit.

De ordinario, el ordenamiento ha condicionado el alcance del descubrimiento de prueba a dos aspectos medulares, a saber: (1) información que no constituye materia privilegiada en lo que respecta a los privilegios reconocidos y, (2) materia pertinente al asunto en controversia. Empero, existen limitaciones adicionales que versan sobre rasgos del descubrimiento de prueba y que han surgido como corolario de la facultad judicial de restringir el amplio ámbito reconocido al procedimiento.

Sobre este particular, y en lo que atañe al asunto ante nuestra consideración, este Tribunal dirimió cuándo procede la toma de deposición de un abogado de una parte. En Ades v. Zalman, 115 DPR 514 (1984), tuvimos la oportunidad de expresarnos en torno a la peculiar situación que acaecía al solicitar un descubrimiento

destinado a la representación legal de una parte en el litigio. Aunque nuestro ordenamiento reconoce la posibilidad de dirigir el descubrimiento de prueba a cualquier persona, era meritorio considerar la relación que existe entre un abogado y su cliente, como su asesor clave y confidente, y los deberes éticos que se imponen a esta relación en aras de evitar que un abogado sea parte o se incorpore como elemento probatorio. Ello pues, "el mero hecho de que una persona sea abogado, no opera ipso facto como un escudo que impide que se le tome una deposición". Cuevas Segarra, op. cit, pág. 851. Ante tal situación, y conscientes de los riesgos que presentaba conceder un poder irrestricto de deponer a la representación legal de la parte contraria, emprendimos un análisis enmarcado en la justa consideración de los intereses encontrados, a fin de determinar bajo qué circunstancias debía proceder el reconocimiento de tal deposición.

En ese balance de intereses, este Tribunal consideró el derecho de una parte a llevar a cabo un descubrimiento de prueba amplio en lo que respecta a quién puede ser depuesto *vis a vis* la relación abogado-cliente. En aquella ocasión, enfatizamos que la relación abogado-cliente es una permeada de confianza e involucra un alto grado de celo y secreto profesional. Tan importante es ésta para el ordenamiento que se promueve la renuncia de un abogado como parte de la representación legal cuando

éste se encuentra en posición de ser llamado a declarar, a menos que su testimonio verse sobre asuntos meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes. 4 LPRA Ap. IX, C. 22. De otra parte, el derecho a descubrir prueba intenta proveer a los litigantes las herramientas necesarias para sustentar su postura y asegurar la tramitación eficiente de un pleito.

Efectuando el aludido balance, reconocimos el derecho limitado de realizar un descubrimiento de prueba al representante legal de una parte en el pleito y descartamos la noción errada de que una orden a esos fines era improcedente. No obstante, establecimos que para deponer al abogado de una parte es necesario que se establezca justa causa. Como elemento determinante de la justa causa, los tribunales debemos dirimir si la información que se pretende descubrir al deponer al abogado de la parte contraria es susceptible de ser obtenida por medios menos onerosos y complejos. Ades v. Zalman, *supra*, pág. 524. Así, si existen otras fuentes satisfactorias para la obtención de la información se debe prescindir de deponer al abogado. Estos requisitos exigen un estricto y ponderado escrutinio.

A pesar de que se ha validado la toma de deposiciones al representante legal de una parte en el pleito, la controversia en el caso de autos no puede ser resuelta aplicando aisladamente la norma plasmada en Ades v.

Zalman, *supra*. La razón para esto consiste en que la situación actual versa sobre la toma de deposición de un abogado que, sin ser parte de la representación legal en el pleito, es miembro del bufete que la posee, y en la que ha mediado una solicitud de descalificación de representación legal. Asimismo, la información que se pretende descubrir no es una protegida por el producto del trabajo del abogado (*work product)* como ocurrió en Ades v. Zalman, *supra*. Por el contrario, en el caso ante nos, el descubrimiento solicitado está dirigido a esclarecer los hechos que dan lugar a la reclamación del señor Alvear Maldonado, el tipo de funciones realizadas, sus responsabilidades y la contratación aplicable, entre otras, durante su desempeño como socio.

Como corolario, el escrutinio desarrollado en Ades v. Zalman, *supra*, resulta incompleto debido a que no se consideró las implicaciones y efectos nocivos que podría llevar la toma de deposición cuando media una solicitud de descalificación de la representación legal por una posible violación al Canon 22 del Código de Ética Profesional, ya que se pretende usar al abogado miembro de la firma como testigo.

**III**

A raíz de tal realidad, es menester examinar las normas de nuestro ordenamiento jurídico que regulan el ámbito disciplinario y la descalificación. A esos efectos, resulta meritorio considerar la normativa en

torno a la descalificación y las disposiciones del Canon 22 del Código de Ética Profesional que versan sobre la descalificación de la representación legal en un pleito. Veamos.

Como es sabido, el poder de reglamentar la admisión al ejercicio de la abogacía y la suspensión o separación de éste le corresponde exclusivamente a este Tribunal. Warner Lambert v. F.S.E., 111 DPR 842 (1982). Es esta Curia la que posee la facultad para entender en toda acción disciplinaria contra un abogado por conducta impropia en violación al Código de Ética Profesional. K-mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633, 637 (1988).

Lo anterior no significa que los tribunales, en el ejercicio inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, no puedan descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Por ello, el Tribunal de Primera Instancia está facultado para ordenar la descalificación de un representante legal cuando ello propenda la adecuada tramitación de litigio y resulte necesario para la solución justa, rápida y económica de los pelitos. Meléndez v. Caribbean Int'l. News, 151 DPR 649, 661 (2000). Ello, pues, la descalificación puede proceder para prevenir una violación a cualquiera de los

cánones del Código de Ética Profesional o para evitar actos disruptivos entre los abogados durante el litigio. Íd. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., Lexis Nexis de Puerto Rico, 2010, pág. 73. Así pues, un adjudicador puede valerse de este mecanismo para asegurar el cumplimiento de un abogado con sus deberes para con la sociedad, los tribunales, sus clientes, sus compañeros y su profesión.

Como consecuencia, la descalificación no conlleva necesariamente una sanción ética. Empero, ésta afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos, por lo que no debe atenderse ligeramente. *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596-597 (2012). Las consecuencias para las partes son reales, múltiples y complejas. De entrada, advenir sin representación legal una vez iniciado el pleito, en la mayoría de las ocasiones, representaría un cambio sumamente oneroso que conllevaría la adquisición de una nueva representación legal, un periodo para que ésta se familiarice con el caso, y conjuntamente, un tiempo para que se entable una nueva relación abogado-cliente. De otro modo, el negar la concesión de una solicitud cuando de ésta surge que existe, o podría existir, una violación al Código de Ética Profesional, o que se afectaría negativamente a una parte, podría ser igualmente lesivo. Así, hemos señalado

que los procesos de descalificación "conllevan repercusiones que tienen el efecto potencial de afectar los derechos de las partes y el trámite de los procedimientos". Íd., pág. 599.

A estos efectos, la norma jurídica desarrollada requiere que al momento de evaluar una solicitud de descalificación el tribunal sopese los intereses en conflicto, a saber: el derecho que le asiste a todo ciudadano a escoger libremente el abogado que lo represente,[4] el derecho a un descubrimiento de prueba amplio y liberal, y "el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial". Íd., pág. 597.

En la construcción de este análisis se deben considerar las particularidades de cada caso y los efectos que la concesión o denegación de solicitudes dirigidas a alterar el curso ordinario de los pleitos. Conjuntamente, se debe velar por el derecho que posee el abogado sujeto a ser descalificado a presentar prueba en su defensa y a ser escuchado. In re González Blanes, 65 DPR 381 (1945). Como regla general, al momento de dirimir

---

[4]Esta Curia ha reconocido el derecho de todo ciudadano a la libre selección de su representación legal. Meléndez Vega v. Caribbean Int'l News, 151 DPR 649 (2000); Otaño v. Vélez, 141 DPR 820 (1996); In re Vélez, 103 DPR 590 (1975). Empero, este derecho no ha sido considerado como un derecho fundamental. Es decir, no existe un derecho absoluto a poseer representación en el trámite de un pleito civil, ni a ser representado por un abogado en particular. Meléndez Vega v. Caribbean Int'l News, supra.

si procede la solicitud de descalificación de un representante legal, los tribunales consideran los factores siguientes: (1) la legitimación de quien solicita la descalificación; (2) la gravedad de la posible violación ética; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos cuando se solicita la descalificación y el efecto para la solución justa, rápida y económica del caso; y (5) el propósito detrás de la solicitud de descalificación, es decir, si ésta se utiliza como una práctica dilatoria. Otaño v. Vélez, 141 DPR 820 (1996).

Como expusimos, la descalificación puede proceder para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional. Este Código sirve como un cuerpo normativo dirigido a establecer las pautas mínimas que deben guiar a los abogados en el desempeño de su profesión. *In re* Nogueras Cartagena, 150 DPR 667 (2000). En éste se prescribe un ordenamiento que regula las interacciones de los abogados con los demás miembros de la sociedad con miras a salvaguardar la integridad y altitud de la profesión y de sus integrantes. Asimismo, codifica la conducta de los representantes legales en el contexto de la relación abogado-cliente mediante el establecimiento de normas destinadas a evitar los conflictos de intereses y la protección de la confianza y confidencialidad características de este vínculo.

En el contexto de la situación ante nos, el Canon 22 del Código de Ética Profesional, *supra*, regula la situación conflictiva que surge al requerirse la presencia de un abogado como testigo en el caso que litiga. Este canon dispone que los abogados no deben convertirse en testigos en apoyo de sus clientes, excepto en situaciones en las cuales se pretende obtener testimonio sobre asuntos meramente formales. No obstante, cuando el testimonio resulta necesario, el abogado se encuentra en la obligación de renunciar a la representación legal a fin de evitar macular la relación abogado-cliente. Íd. Ahora, cuando el llamado a testificar lo es un socio o un abogado que labora en el mismo bufete que el representante legal de una parte, procede la renuncia del representante legal en el litigio tan pronto éste se entere de que alguno de sus socios o compañeros de bufete, "**puede** ser llamado a declarar en contra de su cliente". Íd. (Énfasis suplido).

### IV

Ante el cuadro normativo expuesto, para dilucidar la controversia de autos se requiere establecer un escrutinio judicial integral que considere el efecto que puede conllevar tanto la deposición como la descalificación solicitada. Ello, pues, esta última se fundamenta en que el abogado a deponer será llamado a

declarar en contra del cliente del bufete en el que es miembro. Veamos.

**A.**

Como parte de ese análisis estamos de acuerdo con lo expresado por la mayoría de este Tribunal en cuanto a que se debe extender lo resuelto en Ades v. Zalman, *supra*, con el propósito de que aplique a los abogados que, sin representar a parte alguna en el pleito, pertenecen al bufete que asume la representación legal. Por tanto, en primer lugar, la parte que solicita la deposición debe demostrar justa causa para que proceda la deposición solicitada. Es decir, los tribunales deben examinar si se justifica la toma de la deposición y si existen medios menos onerosos para conseguir la prueba solicitada. De entenderse que el descubrimiento de prueba no es indispensable o que podría ser obtenido por otro medio, no procedería la deposición solicitada.

Ahora bien, una vez cumplido con el requisito de justa causa expuesto en Ades v. Zalman, *supra*, el examen no puede culminar sin evaluar la situación peculiar que surge ante la descalificación solicitada por razón de que el abogado a deponer puede ser llamado a declarar en contra del cliente del bufete en el cual es socio o miembro. Esto, ya que hemos anticipado que se pueden presentar situaciones en las que se niegue la toma de una deposición cuando ello resulte apropiado, aunque haya

justa causa para deponer. <u>Zaragoza v. Tribl. Superior</u>, 78 DPR 447, 451 (1955).

**B.**

En el caso particular de una solicitud de descalificación por posible infracción al Canon 22 del Código de Ética Profesional, *supra*, es necesario analizar el hecho de que la renuncia del representante legal procede si el testimonio del socio o abogado de la firma es en contra del cliente del bufete en el que labora. Para ello, basta que el abogado se entere que él, su socio o un abogado de su firma puede ser llamado a declarar en contra de su cliente. Íd. Por tanto, este hecho debe ser considerado y no ignorado antes de ordenar la deposición cuando la parte que solicita la deposición reiteradamente ha indicado que se propone a usar al abogado a deponer como testigo.

Al tribunal le corresponde considerar los posibles efectos que conlleva ordenar la toma de la deposición sobre una potencial descalificación de la representación legal. A nuestro juicio, postergar tal consideración redunda en un análisis defectuoso que no considera los balances de intereses en juego. Por un lado, la necesidad de un descubrimiento de prueba liberal y amplio y por otro la importancia que tiene la representación legal para un cliente. Máxime, cuando hemos reconocido que en ocasiones el descubrimiento de prueba se utiliza como un medio mortificante, abusivo y opresivo que tiene como

efecto trastocar el curso ordinario del litigo. Ades v. Zalman, *supra*, págs. 523-524.

No podemos olvidar, que siempre existe el riesgo de que se intente la deposición de un miembro de un bufete con el fin de hostigar a la parte contraria. Por tanto, se debe escrutar el momento en que tiene lugar la solicitud de deposición y descalificación presentada para considerar las motivaciones que la promueven, como por ejemplo, si en efecto se utiliza para la dilación de los procedimientos; la complejidad del caso; y la experiencia de los abogados ante situaciones que podrían surgir tales como la capacidad para lidiar con el careo que conlleva el contrainterrogatorio de un compañero de bufete.

La incorporación de estos criterios al esquema provisto alcanza establecer unas graderías que abaten la aplicación aislada de la norma establecida en Ades v. Zalman, *supra*, y fomentan un balance adecuado entre el derecho a un descubrimiento de prueba amplio y liberal, el derecho a un juicio justo e imparcial, y el derecho a la libre selección de su representación legal. Además, soslaya el uso inadecuado de la solicitud de toma de deposición como estrategia de litigio o subterfugio para la intimidación en la tramitación de un juicio.

El conjunto de criterios antes mencionados completa el escrutinio judicial que debe ser realizado por los foros adjudicativos en miras a dilucidar el proceder de una solicitud de toma de deposición dirigida a un abogado

que no es parte de la representación legal cuando paralelamente se pretende la descalificación del abogado de la parte contraria. Una vez el tribunal considere el esquema establecido, tendrá las herramientas para disponer sobre la toma de deposición. Limitar el escrutinio judicial al cumplimiento con los requisitos de justa causa establecidos en Ades v. Zalman, *supra*, sin evaluar los efectos que la toma de deposición surte ante una posible descalificación, resulta fragmentario y derrota el propósito que se persigue con su imposición, a saber: promover la solución justa de los pleitos que se ventilan ante los tribunales. Por ello, a modo de lograr un análisis justo y balanceado previo a alcanzar una determinación en torno a una solicitud de descalificación resulta meritorio considerar el contexto en que se encuentra la referida solicitud y el criterio de justa causa no es completo.

**V**

Conforme a lo expuesto y tras un minucioso análisis del asunto ante nuestra consideración, procedemos a aplicarlo a los hechos ante nuestra consideración.

De las determinaciones emitidas por el Tribunal de Primera Instancia surge con claridad que el análisis efectuado en consideración a la solicitud de toma de deposición estimó que se había cumplido con el criterio general de pertinencia y los criterios de justa causa y ausencia de medios menos onerosos. Ello, pues, luego de

que el foro de instancia ordenó el descubrimiento de prueba por otros medios Ernst & Young no lo produjo.[5] A raíz de ello, entendió que procedía la autorización requerida para deponer al licenciado Cañellas Fidalgo, toda vez que la solicitud se ceñía a los requerimientos de nuestro ordenamiento normativo y jurisprudencial. No obstante, ante la ausencia de un escrutinio judicial apropiado para la situación particular presentada, no surge que el tribunal efectuara un análisis integral que considerara criterios adicionales dirigidos a evaluar los efectos de la presencia de una solicitud de descalificación fundamentada en que el abogado a deponer será citado como testigo.

## VI

Como consecuencia de lo anterior, opino que la norma de Ades v. Zalman, *supra*, resulta exigua al atender una solicitud de toma de deposición que da lugar a una simultánea petición de descalificación por posible infracción ética. Por tanto, considero imperativo la adopción del examen aquí expuesto para lograr el balance necesario en este tipo de circunstancias. Así las cosas, devolvería el asunto para que el foro primario culmine el escrutinio expuesto conforme a los criterios señalados y determine si procede la toma de deposición del licenciado

---

[5]La mayoría, paradójicamente, en lugar de confirmar el dictamen, devuelve para que se realice lo que ya se realizó.

Cañellas Fidalgo. Como consecuencia, disiento del curso de acción tomado por una mayoría de este Tribunal.


                              LUIS F. ESTRELLA MARTÍNEZ
                                   Juez Asociado